### CALDWELL et al. v. CROSSER et al.
### (No. 3120.)

Court of Civil Appeals of Texas. Amarillo. Dec. 5, 1928.

Rehearing Denied March 27, 1929. Application for Writ of Error Refused Oct. 16, 1929.

Lockhart, Garrard & Brown, of Lubbock, for appellants.

Fred C. Pearce and Schenck & Triplett, all of Lubbock, for appellees.

JACKSON, J. On November 1, 1926, the plaintiffs, W. A. Crosser, R. W. O'Neal, and A. Holloway, resident taxpaying voters of Cochran county, Tex., instituted this suit in the district court of said county against the county judge, J. D. Caldwell, the county commissioners, G. H. Matthews, T. W. Bennett, W. A. Herridge, and Lem Shipman, and the county clerk, R. H. McCaslin, all of whom were duly elected and qualified officers of Cochran county, and constituted its commissioners' court, and Dan Moody, Attorney General of Texas, and G. E. Dunn & Co., citizens of the state of Kansas, as defendants.

The plaintiffs allege:

That the commissioners' court of Cochran county attempted to create said county into a road district with its boundaries coextensive with the boundaries of said county.

That thereafter the commissioners' court caused to be published in the Morton Monitor, a weekly newspaper published in Cochran county, notice of an election to be held on January 23, 1926, for the purposes of determining whether or not road bonds of said county aggregating the sum of $300,000 should be issued for the purpose of building and constructing roads in said county. That said election was held, at which the voters of the county attempted to vote said bonds and a tax for the purposes of paying the principal and interest thereon and to create a sinking fund to discharge said bonds at their maturity. That about February 1, 1926, the commissioners' court issued Cochran county road bonds aggregating the sum of $300,000, in denominations of $1,000 each, bearing interest at the rate of 5½ per cent. per annum, and maturing annually over a period of 30 years. That on February 13, 1926, the commissioners' court entered into a contract for the sale of said bonds to G. E. Dunn & Co. for the sum of $300,000 and accrued interest to date of delivery. That said bonds were printed in denominations of $1,000 each, signed by R. H. McCaslin, county clerk, and J. D. Caldwell, county judge, and said bonds and a transcript of the proceedings had for the issuance thereof were forwarded to Dan Moody for his approval as Attorney General of the state of Texas.

That the attempted creation of Cochran county into a road district and the subsequent election therein for the purpose of determining whether said bonds should be issued and the attempt to vote the tax to pay the interest and create a sinking fund were illegal, void, and of no force and effect, because the law does not provide for the creation of a road district out of an entire county, nor for the voting of bonds in such a district, and the

tax attempted to be levied on the property in said district by virtue of such election is illegal and void.

That, at the time the contract for the sale of said bonds was made, it was generally recognized that a validating act by the Legislature of the state of Texas would have to be passed in order to validate such bonds as had been voted at the bond election in Cochran county, and the commissioners' court, in making the pretended sale to G. E. Dunn & Co., were not actuated by a desire to serve the best interests of the taxpayers, but were dominated by a desire to serve the personal interests of G. E. Dunn & Co., its agents and representatives, who were to share in the profits derived from the transaction.

That the contract for the sale of said bonds entered into between Cochran county and G. E. Dunn & Co. is illegal and void, for the reason that it is contrary to title 22, chapter 3, subdivision 1 of said title and chapter, and particularly article 736, Revised Civil Statutes 1925, because said bonds were not sold on competitive bids, and not sold to the highest and best bidder for cash, but were sold at less than their market value. That said contract did not provide for the proceeds obtained from the sale thereof to be placed in the county treasury to the credit of the available road fund, but stipulated that the proceeds of the sale should be held by the purchaser and paid in installments. That said contract is illegal and void because at the time of said pretended sale said bonds had not been issued, certified, or registered, as provided by law. That the tax levy is void because it is confiscatory and amounts to the taking of property without due process of law, in violation of the Constitutions of the state and the United States.

Plaintiffs allege:

That it is the intention of the commissioners' court, if the bonds are approved by the Attorney General, to apply the proceeds of the sale thereof on roads so as to enhance the value of the property of certain individuals and further the interests of such individuals by building highways into and out of the town of Morton, in Cochran county, and require the traffic coming into the county to pass through the town of Morton, without regard to the best interests of the traveling public or the taxpayers, and solely to benefit the town of Morton, which is small and of no commercial importance, and consists of three or four small stores and one or two filling stations.

That, if the commissioners' court and the Attorney General of the state are not restrained from so doing, they will proceed with the final issuance, sale, and delivery of said bonds to G. E. Dunn & Co., and the proceeds thereof will be illegally spent and squandered.

The plaintiffs pray that on a final hearing the creation of said road district and the bond election be declared void, and the commissioners' court be restrained from any further attempt to have said bonds approved by the Attorney General of the state of Texas, and that said injunction be made permanent.

On April 10, 1928, J. L. Caldwell, W. E. Smart, L. H. Plain, Morton J. Smith, W. A. Turner, Citizens' National Bank, Neches Finance Company, Berger Manufacturing Company, Clem Bros., Jewell Brown, J. A. Hodges, Barrier Bros., G. E. Lockhart, Tom Garrard, H. T. Stewart, Cliff Goodnight, Ralph Goodnight, Thompson drug store, and the Super Service Station, with the permission of the court, intervened in said suit.

The interveners allege that on December 19, 1925, a petition, signed by the required number of qualified property taxpaying voters of Cochran county, was presented to the commissioners' court of said county, praying for an election to be ordered throughout the county to determine whether or not the county should issue bonds, for the purpose of constructing, maintaining, and operating macadamized, graveled and paved roads and turnpikes, or in aid thereof, in the amount of $300,000, bearing interest at the rate of $5\frac{1}{2}$ per cent. per annum; levy a tax to pay said interest as it accrued; and create a sinking fund to discharge said bonds at their maturity, the time of which was to be fixed by the commissioners' court not to exceed 30 years from the date of the bonds.

The interveners sufficiently allege:

That in compliance with said petition the commissioners ordered an election to be held on January 23, 1926, and gave proper and legal notice thereof. That the election was regularly held and carried by a two-thirds vote of the property taxpaying voters. That the returns of the election were made and certified by the election judges to the commissioners' court, and on January 25th the court declared that the election resulted in favor of the bonds, and ordered the issuance of "Cochran County Special Road Bonds" in the sum of $300,000, to be numbered from 1 to 300, inclusive, payable serially, each of the denomination of $1,000, and bearing interest at the rate of $5\frac{1}{2}$ per cent. per annum. That on the same date the commissioners' court levied a tax to pay the interest on the bonds as they accrued and to create a sinking fund to discharge and satisfy said bonds as they matured. That the orders of the court relative to said election were all duly and legally entered in the records of the commissioners' court, to which reference was made as a part of interveners' petition.

That, after said bonds were issued, signed by the county judge, countersigned by the county clerk, registered by the county treasurer, and placed in escrow in the Citizens' National Bank of Lubbock, Tex., subject to the order of said county, some question arose as to the validity of said bonds, and a bill was introduced at the special session of the Legislature, which convened in 1926 (Sp. Acts,

39th Leg., 1st called Sess., c. 55), entitled "An Act Validating the Authorization, Issuance and Sale of Cochran County Special Road Bonds," which act provided for the annual levy, assessment, and collection of taxes on the taxable property in Cochran county to pay the interest and create a sinking fund, and approved and validated all orders of the commissioners' court in respect to said bonds and taxes and the payment thereof, constituted such orders legal evidence, was passed by the Legislature, approved by the Governor, filed in the office of the secretary of state, and became a valid and binding law validating said bonds, the taxes for their payment, and all orders of the commissioners' court pertaining thereto and in connection therewith.

Interveners allege that: This suit was filed by W. A. Crosser et al., the plaintiffs, against J. D. Caldwell et al. the defendants; and thereafter, on January 1, 1927, J. R. Bond succeeded J. D. Caldwell as county judge and F. L. Roland, J. V. Robison, P. L. Thacker, and E. V. Riley succeeded G. H. Matthews, T. W. Bennett, W. A. Herridge, and Lem Shipman as county commissioners of said county.

That Pearce & Triplett, attorneys, were employed to bring, and represent the plaintiffs in, the suit. That, after the suit had been filed, the commissioners' court employed Lockhart & Garrard, attorneys, to defend the commissioners' court and Cochran county and defeat the plaintiffs in their efforts to invalidate said bonds. That, after the qualification of the members constituting the new court, Lockhart & Garrard were instructed by the new commissioners' court to make no further defense to plaintiffs' suit, and, interveners allege, on information and belief, that the present commissioners' court is acting in collusion with plaintiffs in their effort to have said bonds declared illegal and void, and will make no defense to the suit, although it has no foundation in law or fact, because said bonds are valid, and, if not valid in their inception, they were validated by the special act of the Legislature, passed at the special session of 1926. That the interveners are each interested in the subject-matter of the controversy, and have a valid cause of action against the county, and are entitled to have said bonds, or a sufficient amount thereof, sold to satisfy their claims against the county.

Each intervener sets up the amount of his claim, and, except Lockhart & Garrard, alleges separately and in detail that he, or his assignor, performed labor on the roads of said county or furnished material which was used in improving the roads in said county, or that he furnished both labor and material for that purpose; that the labor performed and the material furnished was performed and furnished at the special instance and request of the commissioners' court of said county; that the labor done and the material furnished had been accepted by the county, the account therefor presented to and audited by the commissioners' court, and warrants issued against the road and bridge fund of the county to pay each intervener his claim.

Each intervener alleges that, by express agreement and understanding with the commissioners' court, his warrant was to be issued against the road and bridge fund of the county and paid out of the moneys received from the sale of the Cochran county road bonds, which constituted the fund created by the commissioners' court out of which said warrants could be paid; that said county had no other funds with which to pay said warrants, and that, if they are not paid out of the proceeds received from the sale of the bonds, the county will succeed in defeating the just and legal claims of interveners for the work and material furnished after it had received the benefit of such labor and material. Interveners Lockhart & Garrard base their claim on a contract with the commissioners' court of Cochran county for legal services, which, in so far as they were permitted, they performed, and upon a warrant issued to another for labor on the roads, and assigned to them.

Interveners ask that plaintiffs take nothing by their suit; that the bonds and warrants be declared legal obligations against Cochran county, and ask for a mandamus compelling the commissioners' court to submit said bonds and a transcript of the record thereof to the Attorney General for his approval, and require the sale of said bonds or a sufficient amount thereof to pay off and satisfy the warrants held by interveners; that said bonds be duly advertised and sold, according to law.

In answer to interveners, defendant Cochran county pleaded general demurrer, numerous special exceptions, general denial, and alleged:

That the bonds described in interveners' petition have never been issued, registered, or approved by the Attorney General of Texas, and are in no sense legally issued bonds against Cochran county. That the approval of said bonds is an act to be performed by the Attorney General, and that it is the peculiar prerogative of the commissioners' court and the Attorney General to either complete the issuance of said bonds or decline to do so in their discretion. That to grant a mandamus as prayed for by interveners would hamper the commissioner's court and place it at the mercy of bond buyers in the sale of said bonds.

That the warrants referred to and described in interveners' petition were issued against the road and bridge fund of Cochran county, and at the time of their issuance there was no money in said road and bridge fund with which to pay said warrants, and said warrants constitute a debt to be paid out of the future revenues of the county, and were therefore illegal and void, all of which was known to interveners, or could have

been known by the exercise of reasonable diligence. That the warrants described in interveners' petition were issued in connection with contracts entered into by the commissioners' court, each involving more than $2,000, and were not let to competitive bidders, and such contracts and all of said warrants were illegal and void because no provision was ever made for the levy and collection of a sufficient tax to pay the interest and create a sinking fund to discharge them at maturity.

The other defendants were not cited, did not answer, and were dismissed from the case.

The interveners by supplemental petition pleaded a general demurrer, special exceptions, general denial, and alleged that, after the issuance of the bonds described in their petition and the validation thereof by the Legislature of the state, the commissioners' court of Cochran county decided that it would build and construct the roads in said county by day labor, and thereupon employed the various persons to whom warrants were issued, to perform certain labor and furnish certain material for the building and construction of said roads; that the claims for such work and material were presented to, approved, audited, and allowed by the commissioners' court, and that said claims, when audited, allowed, and the warrants issued therefor, constitute a valid judgment of the commissioners' court, and are binding on Cochran county and against any and all future commissioners' courts of said county; that, at the time said work was done, material furnished, and warrants issued therefor, the commissioners' court had made ample provision for the payment of said warrants, in that they had issued the bonds of Cochran county, had contracted for the sale thereof at par and accrued interest, said bonds had been validated by the Legislature, and the proceeds of said bonds would have constituted the available road fund of said county and the warrants of interveners could have been paid therefrom; that it was understood and agreed between the respective interveners and the commissioners' court that said warrants would be paid out of the proceeds of the sale of said bonds; that none of the contracts made by the commissioners' court for labor to be done or material furnished involved an expenditure of more than $2,000, and was not subject to be let at competitive bidding; that the interveners Lockhart & Garrard were employed to render legal services to the commissioners' court and the county, and the law does not require their contract to be let by competitive bids.

The pleadings in this case consist of sixty pages, but in our opinion the foregoing statement thereof is sufficient.

At the conclusion of the testimony, the court directed a verdict against each and all of the interveners, and rendered his judgment accordingly.

The court recites in his judgment that R. H. McCaslin and the officers representing Cochran county, Tex., and constituting the commissioners' court thereof, together with the plaintiffs W. A. Crosser, R. W. O'Neal, and A. Holloway, having agreed and admitted in open court that said bonds were illegal and void, and it appearing to the court from the argument of counsel and the admissions in open court by the parties plaintiff and defendant and from the evidence that said proceedings and bonds are illegal and void, said bonds and proceedings are decreed illegal and void and of no further force and effect, and the commissioners' court of Cochran county and its successors in office restrained from any further attempt to have said bonds approved by the Attorney General, and that all costs be charged against the defendant, Cochran county. The court adjudged the warrants sued upon by the interveners void, having been issued without any provision for the payment thereof, and interveners are denied all relief.

The interveners excepted to the judgment, and prosecute this appeal.

Appellants assail as error the action of the trial court in adjudging the Cochran county special road bonds null and void, and permanently enjoining their approval and sale, and especially a sufficient amount thereof to satisfy appellants' claims, because the testimony without contradiction discloses that the bonds are valid. The evidence shows that on December 19, 1925, at a regular meeting of the commissioners' court of Cochran county, in response to a petition signed by the requisite number of qualified property taxpaying voters of the county, the court ordered an election to be held throughout said county on January 23, 1926, to determine whether or not Cochran county should issue bonds aggregating $300,000, bearing interest at the rate of $5\frac{1}{2}$ per cent. per annum, for the purpose of constructing, maintaining, and operating macadamized, graveled, or paved roads and turnpikes, or in aid thereof, and to levy a tax upon the property of the county subject to taxation, for the purpose of paying the interest on such bonds and creating a sinking fund for the redemption thereof at their maturity; that legal notice of said election was given, the election regularly held, resulting in favor of the bonds, the returns properly made, and the result duly declared, the bonds ordered issued on the faith and credit of the county, a tax levied to pay the interest and create a sinking fund to redeem the bonds at maturity; that the bonds, with the interest coupons attached, were properly executed by the county judge and county clerk, and the Attorney General furnished with a transcript for his approval.

The plaintiffs, in their petition in which an injunction is sought, do not attack the regularity or validity of the election on any ten-

able ground; they admit that the commissioners' court of the county had entered into a contract with G. E. Dunn & Co. for the sale of said bonds for the sum of $300,000, and accrued interest to date of delivery, and neither they nor the defendant offered any testimony sustaining any allegation attacking the validity of the contract for the sale of the bonds to G. E. Dunn & Co. or the proper disposition of the proceeds by the court when the sale was consummated. Plaintiffs allege that, if· the commissioners' court and the Attorney General are not restrained, the bonds will be issued, approved, sold, and delivered to G. E. Dunn & Co.

The defendant, in its answer to the petition of interveners, attacks the bonds only for the reason that they had never been issued, registered, or approved by the Attorney General of Texas.

The testimony also shows that the old commissioners' court employed counsel to defend the suit instituted by plaintiffs attacking the validity of the bonds; that about January 1, 1927, a new commissioners' court was qualified, and discharged the attorneys representing defendant, and the attorneys representing the plaintiffs were employed to also represent the county. It is obvious from this that, if the plaintiffs and defendant have not entered into collusion to defeat the bonds and the claims of interveners, as appellants contend, they, are very actively co-operating to that end, as admitted by appellees.

The attorneys who originally brought suit for plaintiffs, and who on the trial represented both plaintiffs and the defendant, brought suit in the federal court to secure an injunction, which was dismissed for want of jurisdiction. They, within a very few days thereafter, instituted this suit for plaintiffs in the district court of Cochran county, Tex., and notified the Attorney General thereof, because they understood the bonds would not be approved by him so long as the litigation was pending.

Plaintiffs state in their pleading that, at the time of the contract for the sale of the bonds to G. E. Dunn & Co. by the commissioners' court, it was understood that it would be necessary for the Legislature of the state of Texas to be convened and pass an act validating the bonds. This understanding manifestly grew out of the holding by the Supreme Court of the United States in Browning et al. v. Hooper et al., known as the Archer County Case, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330, which was decided January 4, 1926.

This understanding, however, was based on a misconception of the holding in the case, supra, for the reason that the Supreme Court of Texas in Tom Green County v. Moody, 116 Tex. 299, 289 S. W. 381, 383, says, relative to county-wide bonds, as these were:

"In our opinion, the decision in Browning v. Hooper upholds, rather than destroys, the validity of bonds issued by an entire county, under the Texas statutes, for the improvement of roads of the county. It is too plain for argument that, when the statute authorizes a county to issue bonds and to levy taxes to pay them on all taxable property of the county, the Legislature has itself selected the property to be taxed. And we think, in view of the constitutional and statutory limitation, that the amount of the bonds shall not exceed one-fourth the assessed valuation of all real property in the county, and in view of the fact that the amount of the bonds is required to be fixed and stated only in the court's order for the election, the reasonable construction of the statutes is that the amount of the bonds, together with their interest rate and date of maturity, is to be determined in the exercise of delegated Legislative authority by the commissioners' court, provided the amount of the bonds shall not exceed the bounds fixed by the Constitution and statutes. * * *

"We are, however, of the opinion that if the bonds were originally subject to attack on constitutional grounds, they have since been validated by Act of the Legislature of Texas. * * *

"The Governor, on October 14, 1926, approved a law, which became effective on that date, whereby the election at which the bonds here involved were voted, the notice of the election, all orders of the commissioners' court, the taxes levied to pay the bonds, and all other proceedings pertaining to the bonds were each and all expressly ratified and validated."

Hence, if the bonds, as originally voted, were void by reason of the holding in the case of Browning v. Hooper, supra, they were validated by an act of the Legislature. Acts 1926, Thirty-Ninth Legislature, First Called Session, page 23. Tom Green County v. Moody, supra. In addition to this interpretation of the decision of the Supreme Court of the United States in Browning v. Hooper by the Supreme Court of Texas, relative to county-wide bonds, and the general law validating said bonds, the Thirty-Ninth Legislature passed an act entitled, "Validating Special Road Bonds of Cochran County." First Called Session, Thirty-Ninth Legislature, p. 173. This special act of the Legislature authorized the issuance and sale of the bonds here involved, provided for their payment the annual levy, assessment, and collection of taxes, and approved and validated all orders of the commissioners' court in respect to said bonds and the taxes from which they were to be paid. This special law also validated the bonds and all proceedings in connection therewith. Anderson County Road District No. Eight et al. v. Pollard, 116 Tex. 547, 296 S. W. 1063.

■■ The special act by the Thirty-Ninth

Legislature, validating the bonds of Cochran County, was a local or special law, Austin Brothers v. Patton (Tex. Com. App.) 288 S. W. 182, and courts do not take judicial notice of local laws of the Legislature, Holmes v. Anderson, 59 Tex. 481. For a litigant to avail himself of such special law, it is necessary to both plead and prove it. This special act was not introduced in evidence, but the record discloses by oral testimony, without objection, that such bill was introduced, passed by the Legislature, signed by the Governor, registered, and became a law and validated the bonds.

 As presented by this record, the bonds involved were not void because they were county-wide bonds, and such bonds were not rendered invalid by the decision of the Supreme Court of the United States in Browning v. Hooper, supra. They were not void because validated by chapter 16, General Laws of the Thirty-Ninth Legislature, First Called Session, supra, and by the special law passed by the same Legislature, expressly validating the bonds of Cochran county involved in this suit.

Appellees undertake to sustain the action of the court on the authority of Bone v. Black (Tex. Civ. App.) 174 S. W. 971, holding that, until school bonds were sold, the voters might, by an election, discontinue the tax, for which reason no valid contract could be made for the erection of a school building until the bonds were sold and the money in the treasury. This decision has no application in this case, for the reason that articles 781–784 (Rev. St. 1925), providing how an election may be held to cancel road bonds theretofore voted, was expressly repealed by the First Called Session of the Thirty-Ninth Legislature, chapter 16, section 30, p. 32. There are no facts disclosed in this record that would authorize the court to hold the bonds involved invalid, and the agreement in open court between the three plaintiffs and the new commissioners' court would not authorize a judgment declaring such bonds void and permanently enjoining their approval and sale.

The appellants challenge as error the action of the trial court in excluding, on objection of appellees, the order of the commissioners' court directing the advertising of and the advertisement of the bonds for sale; the excluding of the order of the commissioners' court contracting with G. E. Dunn & Co. for the sale of the bonds for face value and accrued interest to date of delivery; the excluding of the letter from the Attorney General, stating that he had been advised by the attorneys for appellees and by the county clerk of Cochran county that a suit was pending attacking the validity of the bonds, and, until he could be furnished a certificate showing that no litigation was pending, he would not be authorized to approve the bonds; the excluding of the testimony offered by appel-lants tending to show that each intervener had contracted with the commissioners' court to be paid for his work, material, or services out of the proceeds of the sale of the bonds when such sale was consummated, and that the work was done by day labor; the excluding of the warrant issued in favor of Lockhart & Garrard for attorneys' fees; the excluding of the proceedings in the United States District Court for the Northern District of Texas, in which court the plaintiffs originally sought to enjoin the approval, issuance, and sale of the bonds, because the purpose of this testimony was to show that the litigation by the plaintiffs against the county prevented the approval, issuance, and sale of the bonds by the old commissioners' court; that, at the time of the respective contracts between the county and the interveners for the labor done, material furnished, or services rendered, the county made provision for funds with which to pay for such labor, material, and services; and that the county had contracted to pay out of the funds so provided, which was to be the proceeds derived from the sale of the bonds, and to show the claim of Lockhart & Garrard.

██ This testimony was admissible. The commissioners' court had valid county road bonds aggregating the sum of $300,000 within its control for sale. The proceeds from the sale of these bonds were to be expended on building and constructing roads in Cochran county. The testimony excluded, together with the pleading of plaintiffs, which admits that the bonds could and would be sold unless the sale was restrained, the correctness of which admission is not questioned by the defendant, and the failure of the testimony to suggest any fraud in the transactions between the commissioners' court and interveners, we think sufficient to justify the commissioners' court and the interveners, at the time the work was done on the roads and the material furnished for the roads, in "a reasonable expectation" that the funds from the sale of the bonds were "within the immediate control of the corporation," McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322, and "would be on hand," with which the claims of interveners "would be satisfied," Ault v. Hill County, 102 Tex. 335, 116 S. W. 359, and the transactions between the commissioners' court and the interveners were enforceable, Cochran County v. West Audit Co. et al. (Tex. Civ. App.) 10 S.W.(2d) 229, and authorities cited; Coryell County v. Burke & Corbett (Tex. Civ. App.) 4 S.W.(2d) 283; Horn v. Matagorda County et al. (Tex. Com. App.) 213 S. W. 934.

██ The county made provision by legal and proper procedure for funds with which to improve its roads; the testimony tends to show that it employed some of the interveners to work upon the roads; that it purchased material from some of the interven-

ers which was used in improving the roads; the county accepted the work and the material, approved the claims, and issued warrants therefor, and it, as defendant, could not, by agreement with three of its citizens, have the road bonds canceled and have itself permanently enjoined from the sale of said bonds. Nor could it defeat the claims of interveners by arbitrarily refusing to sell a sufficient number of such bonds to satisfy the claims of interveners.

"It was not the purpose of those who framed the constitution and the people who adopted it to furnish a means by which those dealing with the counties of this State could be defrauded." Colonial Trust Co. v. Hill County (Tex. Com. App.) 294 S. W. 516, 518.

There is no testimony in the record that any of the contracts for labor done or any of the contracts for material furnished exceeded $2,000; hence no infringement of article 2368, Rev. Civ. St. 1925, is shown; and this article does not control the commissioners' court in contracting for services requiring special skill or technical learning, such as attorneys. Gibson v. Davis (Tex. Civ. App.) 236 S. W. 202, and Cochran County v. West Audit Co., supra.

Appellants present as error the action of the trial court in directing a verdict against them and adjudging the warrants which evidenced their claims void. This assignment is sustained. What we have said we deem sufficient as a basis for this ruling without extending this opinion further by entering into a detailed discussion of the effect of the commissioners' court auditing, approving, and issuing warrants therefor, or the probative force of these warrants, as evidence to establish a prima facie case for the respective interveners.

The judgment is reversed, and the cause remanded.