J. HARVEY WHITNEY, *Appellant,* v. HILLSBOROUGH COUNTY, et al., *Appellees.*

Division B.

Opinion filed March 25, 1930.

Petition for rehearing denied April 28, 1930.

630

632

*Watson & Saussy*, of Tampa, for Appellant;

*Sutton, Tillman & Reeves*, of Tampa, for Appellee;

*Chester B. Masslich*, of New York City, *amicus curiae*.

STRUM, J.—This is a tax-payer's suit in equity to enjoin the further collection of taxes to pay certain bonds issued by Hillsborough county pursuant to Chapter 10140, Acts of 1925, and to enjoin the payment of said bonds. The attack is primarily against the validity of said Chapter 10140, the authorizing Act. The proceedings taken by the county officers under the Act are not questioned, save that the bill alleges that the Act "has been used for the levy of a tax for the benefit of a chartered private corporation."

The bill of complaint charges that the Act is violative of designated constitutional inhibitions, on account of which it is prayed that the Act, as well as certain bonds issued by Hillsborough county under authority thereof, be declared void and that payment of the bonds be enjoined.

A demurrer to the bill was sustained, and complainant appealed.

The Act provides an additional and supplemental method for improving highways in "any county in the State of not less than one hundred thirty thousand population 'according to the census taken by the State of Florida in the year 1925.'"

That census had been completed and published prior to the passage of Chapter 10140, *supra.* Hillsborough being the only county of not less than one hundred thirty thousand population according to that census, the Act could not at the time of its passage, nor thereafter, apply to any other county, actually or potentially. Thus circumscribed, the provisions of the Act are confined exclusively and permanently to Hillsborough county as definitely and unalterably as if that county alone had been specifically named in the Act. The Act does not relate to a class of counties generally, nor could it apply to counties subsequently acquiring a population of 130,00 or more, as it is limited to the State census of 1925. The Act relates only to one definitely identified county, and can never extend to any other county. It is therefore a local or special law. *Ex parte* Wells, 21 Fla. 280; State v. Daniel, 87 Fla. 270, 99 So. R. 804; Vaughn v. State, 102 So. R. 222; Federal Land Bank v. Nix (La.), 117 So. R. 720; Campbell v. City of Indianapolis, 57 N. E. R. 920; Sutton v. State, 36 So. W. R. 697; State v. Schwab, 34 N. E. R. 736; State v. Scott, 70 Neb. 685, 100 N. W. R. 812; Owens County v. Spangler, 65 N. E. R. 743; Seymour v. Orange, 65 Atl. R. 1033; State ex rel. Bennett v. Trenton, 25 Atl. R. 113; 25 R. C. L. 815. For reasons stated, the rule announced in Collier v. Cassady, 63 Fla. 390, 57 So. R. 617, and in Givens v. Hillsborough County, 46 Fla. 502, 35 So. R. 88; 110 A. S. R. 140, holding the Acts there involved to be general laws, does not apply to this Act.

It is contended that although in its operation and effect the Act is a special or local law, it purports upon its face to be a general law. From that premise appellant further contends that in the passage of the Act the Legislature regarded it as a general law, which is submitted as a sufficient demonstration that constitutional requirements as

to notice of the passage of special or local laws were not obeyed. It is therefore contended that this Act must be struck down for failure to give notice of its passage because it would be illogical to apply to this situation the rule announced in Stockton v. Powell, 29 Fla. 1, 10 So. R. 688.

The legislative journals are silent as to notice. There is nothing in the record to enlighten us as to whether the Act was passed by the Legislature as a local or general law, if indeed that question would be material. The fact that the Act has been brought forward in a subsequent compilation, not an enactment, of General Laws as Section 2516 et seq., Comp. Gen. Laws, is immaterial in the consideration of this question.

A clear conception of the doctrine first announced in Stockton v. Powell, *supra,* is important here. There is a presumption that a statute has been duly enacted unless the legislative journals, or other evidence of equal dignity, show the contrary. State v. Carley, 104 So. R. 577. The doctrine announced in Stockton v. Powell, however, does not rest upon that presumption. That doctrine was *not* that this Court would "presume" from the passage of a special or local law that the required notice had been given. So the situation here presented is not one involving the illogical application of a "presumption" that notice of intention to apply for the passage of this Act as a special or local law was given, when the Act upon its face bears the guise of a general law.

The doctrine clearly announced in Stockton v. Powell, and consistently followed in an unbroken line of subsequent cases, is that the judiciary is "without power" to inquire whether the required notice of application for the passage of local or special legislation has been given. Determination of that question is exclusively a legislative duty and function, committed to the Legislature by the Constitution

itself. The postulate of the doctrine is that the Constitution itself divides the State government into three co-ordinate and co-equal departments—legislative, executive and judicial—and provides (Art. II) that ''no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution.'' Further, the Constitution specifically provides (Art. III, Sec. 21) that ''the evidence that such notice (of intention to apply for the passage of local laws) has been published shall be established 'in the Legislature' before such bill shall be passed.'' The determination *vel non* of the fact of publication is exclusively a legislative function, the constitutional provisions just quoted excluding any interference in the matter by the judiciary. As it is not to be supposed that the Legislature is less faithful to its constitutional obligations than a court, and as the Constitution commits the question exclusively to legislative determination, the judiciary is without power to review the legislative judgment upon the question as indicated by the passage of the Act. The courts therefore deem the question concluded by the passage of the Act (State v. Fearnside, 87 Fla. 349, 100 So. R. 256; Jackson Lbr. Co. v. Walton County, 95 Fla. 632; 116 So. R. 771; Smith Bros. v. Williams, decided at this term) when, as here, the law was enacted at a regular, not an extraordinary, session of the Legislature. See Horton v. Kyle, 81 Fla. 274, 88 So. R. 757, wherein this Court declined to apply the rule because it was obviously impossible for the required notice to have been given during the time intervening between the Governor's call for the special session and the time of the passage of the bill.

Chapter 10140, *supra,* was passed prior to the amendment of Art. III, Sec. 21 of the Constitution, adopted in 1928, requiring evidence that notice has been published to

be attached to the proposed bill and to be spread upon the journals, which now permits the courts to look at the journals and to the evidence attached to the bill to ascertain whether they disclose that proper notice was given. See Douglas v. Weber, decided at this term.

It is contended that the Act violates Art. III, Sec. 16 of the Constitution, in that it embraces more than one subject, and that the subject thereof is not embraced in the title, that is, that the provisions of the Act are broader than the title.

The title is:

"AN ACT to Authorize Counties of Not Less Than One Hundred Thirty Thousand Population, According to the Census Taken by the State of Florida in the Year 1925, to Improve Highways Upon Petition and to Pay the Cost Thereof by Special Assessment in Whole or in Part and to Issue Bonds and Levy Taxes."

The subject of the Act generally, as disclosed by its provisions, is the improvement of county highways, the Act providing an additional and supplemental method of accomplishing such improvements, and prescribing a method of present financing and ultimate payment for the projects undertaken thereunder.

The generality of the title of a statute does not invalidate it so long as the title fairly comprehends and gives notice of the object sought to be accomplished by the statute, when such generality is not deceptively employed to conceal incongruous provisions unrelated to the general subject of the Act. State v. Daniel, 87 Fla. 270, 99 So. R. 804; 25 R. C. L. 842.

The title here involved gives sufficient notice of the

subject matter and object of the Act to reasonably lead to inquiry into the body of the Act to ascertain the method provided for accomplishing the object stated in the title. The title is not misleading. It is, therefore, a sufficient compliance with constitutional requirements as to the scope of the title. In re: DeWoody, 94 Fla. 96, 113 So. R. 677; Lainhart v. Catts, 73 Fla. 735, 75 So. R. 47.

In the accomplishment of a public improvement, the financing thereof and ultimate payment therefor are matters germane to and properly connected with the accomplishment of the improvement, and together comprise one subject. It is, therefore, not obnoxious to the Constitution that those matters are expressed in the title of and included within the Act providing for the improvement. The singleness of subject contemplated by the Constitution is not thereby destroyed. Richman v. Muscatine Co., 42 N. W. R. 422, 4 L. R. A. 445; 14 A. S. R. 308. See also Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. R. 771; State v. Bryan, 50 Fla. 293, 39 So. R. 929; State v. Vestal, 81 Fla. 625, 88 So. R. 477.

Chapter 10140, *supra*, being a special Act authorizing the imposition of special assessments against specially benefited property and also requiring the levy generally upon all the taxable property in the county of a special tax to pay bonds issued to finance improvement projects instituted thereunder, it is contended that the Act violates the constitutional inhibition against the passage of local laws "for assessment and collection of taxes for State and county purposes." Constitution, Art. III, Sec. 20.

Sec. 24 of Art III of the Constitution clearly sanctions the passage by the Legislature of special laws relating to county government. Sec. 5 of Art IX provides that "the Legislature shall authorize the several counties * * * to assess and impose taxes for county * * * pur-

poses,'' of which the improvement of county roads is one. See Amos v. Mathews, decided at this term; Lewis v. Leon County, 107 So. R. 146. There is no express provision in our State Constitution as to the imposition of special assessments for local improvements. City of Gainesville v. Alachua County, 69 Fla. 581, 68 So. R. 759; Lainhart v. Catts, 73 Fla. 735, 75 So. R. 47; Edwards v. Ocala, 58 Fla. 217, 50 So. R. 421; Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 So. R. 280; Pinellas Park Dist. v. Kessler, 69 Fla. 558, 68 So. R. 668. Subject, therefore, to constitutional limitations designed to protect personal and property rights against arbitrary or oppressive exercise of governmental powers, amongst which are the guaranties of due process, equal protection and just compensation (See Consolidated Land Co. v. Tyler, *supra;* Norwood v. Baker, 172 U. S. 269; 43 L. Ed. 443; Houck v. Little River Dist., 239 U. S. 54; 60 L. Ed. 266; Cooley, Taxation (3rd Ed.), 1255), the Legislature may authorize the formation of local improvement districts and the imposition of special assessments by a county for county highway improvement, the improvement of county highways being a county purpose. Parrish v. Hillsborough County, 123 So. R. 830. The provisions of Sec. 5, Art. IX of the Constitution have been construed to mean that the Legislature may authorize the counties *severally* by special or local laws to impose taxes for county purposes, so long as the method and manner of ''assessment and collection'' be as prescribed by general law, so as to observe the inhibition of Art. III, Sec. 20, hereinabove quoted. Kroegel v. Whyte, 62 Fla. 527, 56 So. R. 498, McMullen v. Pinellas County, 106 So. R. 73; Hunter v. Owen, 80 Fla. 812, 86 So. R. 839.

As to the tax to be collected generally upon all taxable property within the county for the retirement of bonds

issued under Chapter 10140, the Act merely requires the "levy" of such a tax. As the Act contains no express provision with reference to the "assessment and collection" thereof, those matters necessarily will be accomplished as prescribed by general law. As to the assessment and collection of the special assessments against specially benefited property as authorized by the Act, it is provided in effect that the board of county commissioners shall cause to be prepared a "preliminary" assessment roll showing descriptions of property and preliminary assessments of costs, which roll shall be filed. A hearing is then provided for interested persons, after which the board of county commissioners may confirm such roll. When confirmed, the roll becomes final and the special assessments in the amount determined by the county commissioners become a lien "to the same extent as the lien for general county taxes and (shall) be collectible in the same manner * * * and under the same provisions as to sale and forfeiture as apply to general county taxes." Section 13. The amounts of these special assessments are determined and assessed according to benefits by the county commissioners, the same officers who determine the rate of general taxation by fixing the valuation and millage. The tax collector collects these special assessments in the same manner as general taxes. These and other cognate provisions of the Act harmonize with the limitations of Art. III, Sec. 20, hereinabove quoted.

Whether the method provided by the Act for collecting delinquent assessments, and the judicial procedure provided for contesting the validity of action taken under the Act by county commissioners looking toward the imposition of these special assessments are valid, is not presented for consideration. See Constitution, Art. III, Sec.

20, inhibiting special laws "regulating the practice of courts of justice, except municipal courts."

There is no contention by this complainant that his property is subject to any special assessment imposed under the Act. His complaint is as a general taxpayer. Consequently, there is no contention involved here that the special assessments exceed the benefits. Nor is the Act assailed in the pleadings on the ground that the entire cost "may" be assessed against specially benefited property when such cost does not exceed the benefits. It does not sufficiently appear from the pleadings what proportion of the cost was assessed against the benefited property in this instance. Neither is there any sufficient basis in the pleadings for the contention that in the projects for which these bonds were issued the county commissioners traveled beyond the legitimate scope of highway improvement as a county purpose, although that question is referred to in the briefs. The Act itself is not amenable to the criticism that it authorizes the levy of a tax for other than county purposes.

The Act under consideration is not repugnant to the requirement of Sec. 1, Art. IX of the Constitution that the Legislature shall provide for a "uniform and equal rate of taxation." So far as the Act requires the levy of a general county tax to pay bonds which the county commissioners elect to issue under the Act, that tax must be imposed equally and uniformly throughout the county, with which requirement the terms of the Act are consistent. The constitutional requirement of equality and uniformity relates to general taxation, not to special assessments, although special assessments must of course be imposed so that the burden on each parcel of land subject to the assessment will bear a just proportion to that imposed upon all other parcels similarly situated and included

within the specially assessed area. Lainhart v. Catts, *supra;* Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. R. 449; Edgerton v. Green Cove Springs, 19 Fla. 140; Stewart v. DeLand, etc., Dist., 71 Fla. 158, 71 So. R. 42; Dailey v. Swope, 47 Mich. 367; Pinellas Park Dist. v. Kessler, 69 Fla. 558, 68 So. R. 668.

The bill charges that the taxes against which relief is sought are levied for the benefit of a chartered company of the State, contrary to Art. IX, Sec. 7 of the Constitution. The allegation to this effect is categorical. No facts are pleaded. Complainant's brief infers the foundation of this charge to be the fact that the improvement, to pay the cost of which the taxes are levied, was upon roads lying wholly or in part within what inferentially appears to be a private subdivision. That fact, if conceded, does not of itself render the tax obnoxious as "for the benefit of a chartered company," nor beyond the scope of a legitimate county purpose.

Nothing is alleged as to the ownership of the lands traversed by these roads, nor as to the relation of these roads to the county highway system generally, nor to the demands of public travel. The presumption that the county officers have done their duty is not to be overcome by the mere fact that the improved roads traversed territory platted into lots and blocks, with names given to the roads, especially when those facts appear only by inference.

We held in Hunter v. Owen, 80 Fla. 812, 86 So. R. 839, with reference to taxes levied to pay special assessment bonds, that if a public improvement that is afforded by tax levies merely incidentally benefits private corporations along with other persons, the Constitution is not violated in levying the tax for the public purpose, for the law contemplates that corporations shall participate in the

burdens and benefits of taxation within appropriate limitations.

It is not shown that the lands in the subdivision are owned by a "chartered company," nor that such corporation will enjoy benefits other than those necessarily incidental to the improvement, nor any benefits relatively disproportionate to that to be enjoyed by other property owners, nor disproportionate to the amount of taxes to be paid by the several property owners, including the corporation, to retire the bonds. West v. Town of Lake Placid, 120 So. R. 361; City of Venice v. State, 118 So. R. 308.

It is contended that the Act constitutes an unlawful delegation to the county commissioners of the legislative taxing power contrary to Art. IX, Sec. 3 of the Constitution in that the power is to be exercised by a subordinate body pursuant to a legislative enactment which prescribes no limitation either as to the amount of bonds that may be issued, or as to the amount or rate of taxation that may be imposed thereunder. This contention is upon the theory that the county commissioners are "administrative" officers and that the question is settled by the decisions of this court in Stewart v. Daytona, etc., Dist., 94 Fla. 859, 114 So. R. 545; Merriman v. Hutchinson, 95 Fla. 600, 116 So. R. 271, and State v. Bass, 118 So. R. 214. The boards or bodies involved in the decisions last cited are "statutory" administrative boards. It was there held that there could be no unlimited delegation of the taxing power to such a board; and that either the amount of the bonds to be issued, the rate of the levy or the amount of taxes to be collected, or the indebtedness that may be incurred, must be limited by the Legislature.

Here, however, we are dealing with an authorized exercise of the taxing power by the county itself, acting through its county commissioners. The constitutional provision

(Art. IX, Sec. 5) that "the Legislature shall authorize the several counties  *   *   *   in the State to assess and impose taxes for county  *   *   *   purposes  *   *   *   and for no other purposes," contemplates the existence of delegated authority to the counties to determine the amount of taxes to be imposed "for county purposes" upon all property within their limits, which power may be exercised, when granted, by the county acting through its county commissioners.   See Canova v. Williams, 41 Fla. 509, 27 So. R. 30, involving the imposition of excise taxes by a city, but the general principles in which also apply here.

The power to tax is a legislative power.   The general rule is that the "power" cannot be delegated, though it may be exercised through subordinate boards or officers acting within prescribed limits.   There is, however, a qualification of that rule in the case of counties and municipalities—a qualification clearly contemplated by our constitutional provision just above quoted, and well recognized generally —which rests upon a distinction in principle between the delegated exercise of the taxing power by counties and cities, and the delegated exercise of that power through a statutory administrative board possessing no other status.

Of course, counties possess no inherent power to tax. That power, if it exists, must be derived wholly from the sovereign State.   Counties, however, are recognized by the Constitution as "legal political divisions of the State," that is, as governmental agencies.   They are therefore not of statutory origin.   They are *quasi* municipal corporations recognized by the Constitution as proper repositories of local governmental powers, including the power to determine the necessary expenditures and the amount and rate of taxation for county purposes.   Constitution, Art. VIII, Sections 1 and 2; Amos v. Mathews, decided January 23, 1930. . The Constitution also recognizes the existence of

county commissioners in each county, who constitute an administrative board for county affairs. They are not statutory officers. These county commissioners are elected by the people to be affected by their acts, and are directly answerable to them at the polls. That is not true of a statutory administrative board which is selected by some indirect or statutory method in which the direct assent of the people is not essential and in the selection of whom the people exercise no such plenary control as they do in the cases of elective officers such as the county commissioners.

The legislature cannot create an administrative board of purely statutory origin, permissible only because not prohibited by the Constitution, and delegate to it unlimited powers of taxation. Such action is obnoxious to the Constitution as an abdication of the legislative function of taxation. The Legislature may, however, delegate to a county, recognized by the Constitution as a component part of the State government, the authority to assess and impose taxes "for county purposes and for no other purposes" when acting through its county commissioners who are constitutional officers elected by the people.

The delegation of the power under such circumstances is tantamount to the State empowering, not a mere statutory board possessing no governmental status, but a constitutionally recognized governmental agency to act for it in matters of local taxation. The power, when granted by the Legislature to a county, is exercised in effect by the people acting through their representatives directly chosen by them at the polls for that purpose. The constitutional limitation upon the power is that the tax shall be imposed "for county purposes and for no other purposes." Board of Commissioners of Escambia County v. Board of Pilot Commissioners, 52 Fla. 197, 42 So. R. 697.;

Wright v. House, 121 N. E. R. 43; Stoppenbach v. Multonomah. County, 142 Pac. R. 832; Cooley, Taxation (4th Ed.), Sections 75 et seq., 119, 162; Cooley, Const. Lim. (7th Ed.), p. 165.

Of course the action taken by the county pursuant to such authority, particularly where the authority is general, must be both legal and reasonable. Such action is subject to judicial review. Getzen v. Sumter County, 103 So. R. 104. Since the county possesses no inherent power of taxation, the authority so granted to a county is, of course, subject to valid legislative limitations, conditions, modifications or repeal in appropriate cases when no vested constitutional rights would be impaired.

It is contended that the procedure prescribed by the Act is lacking in due process. The. proceedings are initiated by petition addressed to the county commissioners signed by the owners of two-thirds in interest of property. to be specially benefited by the improvement, which petition must describe the property to be affected' by the project. The area described is regarded as an improvement district and may embrace both abutting and non-abutting property, upon which property special assessments may be imposed according to the special benefits primarily or indirectly accruing from the improvement. See City of Ft. Myers v. State, 95 Fla. 704, 117 So. R. 97; Abel v. Town of Boynton, 117 So. R. 507; Parrish v. Hillsborough County, 123 So. R. 830. The petition of the property owners is a mere request. The county commissioners are not *required* to grant the petition, but have the power and discretion either to order such improvement or to reject the petition, and before any work is commenced or special assessment imposed all interested persons are afforded a hearing as to the property to be embraced within the district, which may be modified by

the commissioners to meet valid objections, thus avoiding the difficulties in Browning v. Hooper, 269 U. S. 396, 70 L. Ed. 330. The county commissioners are not required to assess the entire cost upon the specially benefited property. The Act makes provision for either the assessment of the entire cost, or of only a portion thereof (not less than 75%), against the benefited property, the remainder to be paid from the general county funds as determined by the county commissioners (See Browning v. Hooper, *supra*). There is no requirement that public property situate in the improvement district be exempted from the special assessments and the portion of the cost applicable to such lands charged against the remaining lands in the district, as was the case in Parrish v. Hillsborough County, *supra*. If the county commissioners find the petition sufficient and by resolution order the improvement to be made, specifications and estimates of cost are prepared and filed with the clerk of the board, after which at least ten days notice by publication is given "that said board will hear objections of all interested persons to the consummation of such resolution," after which hearing the commissioners may repeal, confirm or modify the resolution ordering the improvement, thus affording all interested persons notice and an opportunity to be heard upon the formation of the improvement district. If the commissioners confirm the resolution they may then issue bonds not exceeding the estimated cost of the improvement, or if the contract has been let, not exceeding the contract price. After the contract for the work has been let, a preliminary assessment roll is prepared containing property descriptions and preliminary assessments of cost against each lot of land within the district, which preliminary roll shall not be confirmed unless and until all interested persons shall have been given notice and an

opportunity to appear before the board and present objections as to benefits or otherwise. After such hearing the board is authorized to annul, sustain or modify the *prima facie* assessments indicated on the preliminary roll. The Act specifically provides that the board shall not confirm any assessment in excess of the special benefit to the property assessed, and the board of county commissioners is required to act "according to the special benefits which said board decides each lot or parcel has received or will receive on account of said improvements."

Thus, by the terms of the Act, affected property owners are afforded reasonable notice and an opportunity to be heard upon the question of the undertaking of the improvement, or the formation of the improvement district, and before any special assessment may be imposed another hearing is afforded upon the question of special benefits, to which the special assessments under the Act are specifically limited. No special assessment may be imposed prior to such hearings. The proportion of the cost to be specially assessed is determined by the county commissioners after affording interested persons an opportunity to be heard. Such procedure conforms to the requirements of due process. Smith Bros. v. Williams, decided February 18, 1930, 126 So. R. 367; Walters v. City of Tampa, 101 So. R. 227; State of Ohio ex rel. E. H. Bryant v. Akron Metropolitan Park Dist. (March 12, 1930), 280 U. S.—, 74 L. Ed. 333; Hagar v. District, 111 U. S. 701, 28 L. Ed. 569; Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616; Withnell v. Kneckling, 249 U. S. 63, 63 L. Ed. 479; Fallbrook Dist. v. Bradley, 164 U. S. 112, 41 L. Ed. 369; Spencer v. Merchant, 125 U. S. 345; 31 L. Ed. 763; Chicago, etc., Ry. Co. v. City of Janesville, 118 N. W. R. 182, 28 L. R. A. (N. S.) 1124, 1201; In re: Little River Dist., 139 So. W. R. 330; *idem* Houck v. Little River Dis-

trict, 239 U. S. 54, 60 L. Ed. 266; Embree v. K. C. & Liberty Blvd., 240 U. S. 624; Wells Fargo Co. v. Nevada, 248 U. S. 165, 63 L. Ed. 190; Beebe v. Magoun, 97 N. W. R. 986; Valley Farms v. Westchester County, 261 U. S. 155, 67 L. Ed. 585.

Appellees demurred to the bill upon the ground, amongst others, that holders of the bonds are not made parties to the suit. Even if it is proper to raise this question by demurrer, the objection is not tenable under the facts alleged in the bill.

It is alleged that the bonds in question are negotiable bonds and "have passed into the hands of, and are now owned by purchasers unknown to your orator, but believed by your orator to be in great numbers and scattered throughout many jurisdictions foreign, and not amenable to this court."

The primary relief sought, however, is to enjoin collection of the tax to pay the bonds, not to determine the contract rights of the bondholders against the county. Any decree rendered will, of course, apply only to parties and their privies. The contract rights of the bondholders will not be prejudiced, nor will the question of the county's liability to them be affected. For the purposes of this suit, that is, enjoining collection of the tax and enjoining payment of the bonds as such, the interest of the bondholders is represented by the county commissioners and the trustees for the bonds, who are made defendants. Even if the relief prayed for should be granted, the bondholders not being personally bound by the decree would still have their remedy against the county in other forms of action, for instance in indebitatus assumpsit. The impracticability of making such bondholders parties, and of acquiring jurisdiction over them, would seem of itself sufficient reason for dispensing with them, particularly

where, as here, their interests are represented with respect to the issues now before the court. Such a situation presents an exception to the general rule that all parties interested in the subject matter of the suit must be made parties. Miner v. Trust Company, 124 So. R. 35; Van Vetchen v. Terry, 2 Johns Ch. (N. Y.) 197; Hoffman v. Gallatin County, 44 Pac. R. 973; Kellog v. School District, 74 Pac. R. 110; City Water Supply Co. v. City of Ottumwa, 120 Fed. R. 309, 21 C. J. 297; High on Injunctions, p. 474.

For reasons given, however, there is no equity in the bill and the demurrer thereto was properly sustained upon that ground.

The order appealed from is affirmed.

WHITFIELD, P. J., AND BUFORD, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.