## O. M. WHITCOMB v. CITY OF HOUSTON.

### Decided June 15, 1910. ·

**1.—Cause of Action—Privity.**

One who furnishes to a contractor a sum of money to be used as a deposit for the performance of a contract, with the₀ understanding that the money belonged to the party furnishing it in case of its return, has such an equitable interest in the fund as would entitle him to maintain an action against the depositary in the event its return was wrongfully refused. The fact that the plaintiff was not a party to the contract between the contractor and the depositary would be immaterial.

**2.—Contract—Breach—Liquidated Damages or Penalty.**

The principle appears to be that although a sum be positively named as liquidated damages the courts will not so treat it unless it bears such proportion to the actual damages that it may reasonably be presumed to have been arrived at by a fair estimate of the compensation to be paid for the prospective loss.

ON MOTION FOR REHEARING.

**3.—Contract—Penalty or Liquidated Damages.**

The ordinary principles governing the determination of the question whether a forfeit named in a contract was intended as a penalty or as liquidated damages, are not adopted in cases of contracts embodied in legislative grants. A grant or contract by city ordinance is of a legislative character.

**4.—Same—Case Stated.**

A city entered into a contract by ordinance with an electric railway .company for the building and completion of a railway within a certain time,

and granting the company certain franchises; the company deposited a certain sum of money as security against any damages the city might suffer by reason of the grant; the company totally failed to carry out the contract; in a suit to recover the money deposited, held that the trial court properly construed the deposit as liquidated damages and not as a penalty.

Error from the 61st Judicial District, Harris County, Texas. Tried below before Hon. Norman G. Kittrell.

*N. C. Abbott*, for plaintiff in error.—When a contract contains a number of stipulations to be performed, of varying degrees of importance, a single sum stipulated as damages for a breach and applicable alike to each of the covenants will be treated as a penalty, and in an action for a breach only actual damages, alleged and proved, are recoverable. Durst v. Swift, 11 Texas, 282; East Moline Co. v. Weir Plow Co., 95 Fed., 250; Chicago House Wrecking Co. v. United States, 106 Fed., 385; Monmouth Park Assn. v. Warren, 27 Atl., 932; Wallis Iron Works v. Monmouth Assn., 26 Atl., 140; City of El Reno v. Cullinane, 46 Pac., 510; Trower v. Elder, 77 Ill., 452; City of Madison v. American Sanitary Eng. Co., 95 N. W., 1097; Merica v. Burgett, 75 N. E., 1083; Carter v. Strom, 43 N. W., 394; Smith v. Newell, 20 So., 249; Raymond v. Edelbrock, 107 N. W., 194; 13 Ency. Law, 90-101.

Although a sum be named as "liquidated damages," the courts will not so treat it unless it bears such proportion to the actual damages that it may reasonably be presumed to have been arrived at upon a fair estimation of the parties of the compensation to be paid for prospective loss. If the proposed stipulation greatly exceeds the actual loss, if there is no approximation between them, and this is made to appear by the evidence, then only should the actual damages be the measure of recovery. Halff v. O'Connor, 14 Texas Civ. App., 191; Cowart v. Connally & Company, 108 S. W., 973; Collier v. Betterton, 87 Texas, 440; O'Feefe v. Dyer, 52 Pac., 196; Doane v. Chicago City Ry. Co., 51 Ill. App., 353; J. I. Case Threshing Mach. Co. v. Fronk, 117 N. W., 229.

A provision in a contract fixing a sum as liquidated damages will be construed as a penalty, even if not excessive, if no injury has resulted from the breach of the condition for which damages are claimed. Dunn v. Morgenthau, 76 N. Y. Supp., 827; Am. Dig., 1902, sec. 1298, "Damages," Dunn v. Morgenthau, affirmed by Court of Appeals, 67 N. E., 1081; Sherburne v. Hirst, 121 Fed., 998.

The use of the words "penalty," "forfeiture," and "liquidated damages" in the bond or contract, are not conclusive, but such interpretation will be given which, on inspection of the whole instrument, circumstances surrounding the same, and the equities of the case, will seem best to reflect the true intention of the parties. Caeser v. Rubinson, 67 N. E., 58.

*J. E. Niday* and *Wilson, Dabney & Meachum*, for the City of Houston.—The City Council of Houston, in granting the franchise, acted in its legislative capacity, and had a right to require either the payment absolutely of whatever sum of money it saw fit as consideration for said franchise, or to require that a deposit made, as a condition of the

franchise, should become the property of the city if the electric street railway was not constructed and operated within a defined time. The deposit made is in such a case construed as stipulated damages, and not as a penalty, and is recoverable also independently of the law of contracts as a legislative penalty imposed by the city in the legislative act of granting the franchise through the public streets. City of Salem v. Anson, 67 Pac., 190; Clark v. Barnard, 108 U. S., 436; Brooks v. Wichita, 114 Fed., 299; Whiting v. Village of New Baltimore, 127 Mich., 66, et seq; Furth v. Town of West Seattle, 79 Pac., 936; Adams v. Jackson, 30 So., 58; City of Detroit v. Peoples Telephone Co., 135 Mich., 696; Nilson v. Town of Jonesborough, 20 S. W., 1093; Indianola v. Gulf, W. T. & P. Ry. Co., 56 Texas, 594.

JAMES, CHIEF JUSTICE.—O. M. Whitcomb sued the city, also W. E. Scott and W. B. Slosson, alleging in substance that the city, on or about December 10, 1903, by ordinance, granted to Scott, Slossom and other applicants a right of way and other privileges on certain streets of the City of Houston, such franchise being for the construction, operation and maintenance of a single track railway with side tracks, turn-outs, and switches according to a certain plat; that under the provision of said franchise said applicants, on or about December 21, 1903, deposited with the city $2,500 as security against any damages the city might suffer by means of the grant or the acts of the grantees in the exercise of such rights; that said sum so deposited was the individual property of plaintiff, and was furnished and deposited by him for said purposes; that no possession of or interference with streets, nor construction of any part of said electric railway, was ever had or done under said grant except the placing of some trolley poles on each side of McKinney Avenue near the east end thereof in the City of Houston, nor was the city ever put to any expense or obligation or damages or inconvenience by reason of the grant or the failure of the grantee to construct the road; wherefore the city has no right to retain and hold said deposit, which was in the nature of a bond and in the form of a penalty. That the rights and privileges of said Scott and Slosson, their successors, etc., terminated on December 30, 1905, by the terms of the grant, and the city wrongfully keeps and retains said deposit and refuses to deliver it to plaintiff.

There is an allegation in the petition that before the final passage of the grant the other applicants assigned to said Scott and Slosson, who became the owners of the grant on its passage. The prayer was for a decree that the city hold said money in trust for plaintiff, that an account may be had of the damage the city has sustained, if any, and for judgment for the amount of the deposit with interest, and for general relief. The petition set forth the ordinance in full as an exhibit.

Slosson and Scott appeared and disclaimed any interest in the fund and asked to be dismissed.

The city answered by general demurrer and denial; also that there was no privity of contract between the city and Whitcomb.

The city set forth section XIII of its charter relating to "Streets and other Franchises," which provided that the right of the city in

and to its streets, avenues, etc., was inalienable except by 'a certain' vote of the Council; that no franchise or right to use same shall be granted for a longer term than twenty-one years, and that in addition to any other form of compensation, the grantees shall pay annually to the city such sum of money to be prescribed in the grant; that such grant and any contract in pursuance thereof may provide that upon the termination of the grant, the plant, as well as the property of the grantee in the streets, avenues and public places, shall vest in the city, with or without compensation; that every grant shall make adequate provision by way of forfeiture of the grant or otherwise to secure efficiency of public service at reasonable rates and the maintenance of the property in good order; that the city may, if it deem proper, acquire or construct, and may also operate on its own account, and may regulate or prohibit the construction or operation of railroads or other means of transit or transportation, etc.

The answer then alleged that it was not true that the deposit was made as a forfeit or security to the city, but that the grantees, by express contract, agreed that they would begin the construction of the Electric Railway within the corporate limits of Houston within six months from the passage of the ordinance, and would have in operation over the lines of the streets and avenues named therein, cars for the transportation of passengers within twenty-four months from said date, and would have the road built, equipped, constructed and in operation between the cities of Houston and Galveston, and doing business between said points, within thirty-six months from said date. That they agreed to pay annually to the city on January 31, during the life of the grant, which was twenty-one years, beginning forty-eight months after the passage of the ordinance, a sum equal to one-half of one percent of the gross annual receipts from the business of said interurban railway; that a further consideration of the grant and the payment of $2,500 was to protect the city of Houston from its franchise being speculated on by persons or assignees of no financial responsibility and not *bona fide* grantees of the franchise with intention and ability to carry out the agreement on which it was extended; that the granting of this franchise, had the grantees performed as they agreed, would have been highly beneficial to the city and its inhabitants; that the granting of the franchise had, in its nature, the effect of preventing other persons capable of utilizing it from applying, and of the city granting same to others, and there was no reasonable probability that two interurban roads between these cities could be successfully operated at the same time; that said Slosson and Scott were of no financial ability, being unable, as it appears from plaintiff's petition, to furnish the $2,500 deposit required by the contract, and by their so blocking the way to legitimate enterprise the city of Houston and its people have been damaged, but from the nature of the case such damage is incapable of ascertainment, and said sum of $2,500 was deposited as liquidated damages, intended, among other things, to compensate the city for such damage; that had said contract been carried out the city would have received a large revenue annually therefrom, and this element of damage is not susceptible of ascertainment; that the city retains this deposit as agreed and stipulated damages for the breach of

the contract by the grantees, the same being paid with the express agreement, in substance, that the city was to retain it as liquidated damages should the grantees fail to have cars in operation in the city of Houston and to have the road built and in operation between the two cities, as agreed. Defendant also pleaded the two and four years statutes of limitation.

The case was tried by the judge who gave judgment for the city.

We overrule the suggestion of defendant in error that the judgment is not a final one, for the reason that Slosson is disposed of by the judgment which recites that the ·action was dismissed as against Slosson. Another matter raised and discussed by defendant in error is that there was no contractual relation between Whitcomb and the city, he not being an assignee of the franchise nor shown by pleading to have been interested therein. It was found by the court as a fact, and sufficiently established, that Whitcomb furnished Scott and Slosson the $2,500 with which to make the deposit, with the understanding between them and him that the money belonged to plaintiff in case of its return. This was alleged, and it amounted in effect to an equitable assignment of the fund in the event Scott and Slosson became, under the terms of the contract, entitled to a return of it. We think the city can not complain of his right to litigate the matter with it and recover the fund, if recoverable, on such allegation and proof, when both Slosson and Scott were made parties to the action and disclaimed any interest in the fund. Accordingly we think there was error in the court's first conclusion of law that plaintiff showed no right to recover because of no privity of contract.

The court further based its decision against plaintiff upon the finding or conclusion that the city, under the terms of the contract, was entitled to retain the $2,500 as liquidated damages for the failure of Scott and Slosson to perform. Under the assignments of error from two to six, plaintiff in error advances a number of propositions which develop, in different forms, the contention that this deposit should not be taken as a stipulation for liquidated damages, but as a penalty to cover actual damages sustained.

In the first place, the grant provided, by section 7 of the ordinance, that this deposit was "to be forfeited to and become the property of the city of Houston absolutely and without defalcation as liquidated damages should the said parties, their survivors, successors, heirs and assigns fail to have cars in operation as hereinbefore provided within the city of Houston and fail to have said road fully built, equipped and in operation from, to and between Houston and Galveston within thirty-six months from and after the date named." By section 6 it was provided that if the grantees, their survivors, successors, etc., shall fail to have cars in operation over the streets named for passengers within twenty-four months from the passage and approval of the ordinance; or fail to have said road fully built, equipped and in operation between the two cities within thirty-six months from said date; or fail to make the annual payments of one-half of one percent on the gross receipts, or shall fail to make other payments herein provided for, then in such, or either of such events, the said grantees, etc., "shall forfeit their rights, privileges and franchises by this ordinance granted, time

being of the essence of this contract, unless otherwise specially provided, and the same shall thereupon cease and revert to the city of Houston, and upon such reversion back to the city of Houston of this franchise, all work done and all tracks, cars, construction material, tools, teams and implements within the city of Houston, belonging to said Scott and others, their survivors, successors, heirs and assigns, used in the construction of said electric railway shall become the property of the city of Houston, as liquidated damages for the failure of the grantees to comply with the terms of this grant. But it is especially provided that no forfeiture shall be had for the failure to make the payment required by this ordinance until after written demand duly made upon the general manager, treasurer or any other officer of said Scott and others, their survivors, successors, heirs and assigns shall pay the amount then due, with a penalty of ten percent of the full amount due added."

Section 14 provides "that this ordinance shall take effect and be in force from and after its passage, approval, acceptance by the grantees as hereinbefore provided for, and the payment of deposit of said $2,500 with the Mayor of the city of Houston and upon the terms and conditions hereinbefore provided for and set forth."

By section 2 the ordinance relates to repairs to streets under the direction and requirement of the city engineer at the expense or partial expense of the grantees.

By section 3 the grantees were to furnish vestibules to each of the cars, except trailers, between certain dates, etc., and for every failure in this respect they were to forfeit and pay to the city on demand as liquidated damages, fifty dollars for each and every day that any car was operated without vestibules during said period.

By section 4 the grantees were required to begin the construction within six months and have cars for passengers in operation on the streets designated within twenty-four months, and have the road fully built, equipped and in operation between the two cities for passengers and freight within thirty-six months from the approval of the ordinance by the Mayor.

By section 5 they agreed to pay the city the one-half of one percent on the gross annual receipts above referred to.

By section 8 the grantees were to use electric power and not steam.

By section 9 they were to use such character of rails as may be prescribed by the Council, and to lay same at grades required by the city engineer.

By section 10 they were required during the life of the franchise to use only Houston nonexpert labor within the city of Houston and to pay therefor the same wages as the city paid.

By section 11 they were required not to charge for passengers over five years of age, within the city limits, more than five cents a passenger.

By section 12 it was provided that the grantees were not to transfer any freight cars from or to any other steam line entering the city, and that all freight or express matter was to be carried in cars, the exterior of which was to be similar in appearance to the passenger cars.

It will be seen that section 7 provides that the $2,500 deposit, and that section 8 likewise provides that the franchise and all of the work

done, tracks, cars, material, tools and implements within the city of Houston, shall become forfeited and become the property of the city of Houston as liquidated damages in the event that the grantees shall fail to have cars in operation within the city of Houston within twenty-four months, or shall fail to have the road fully built, equipped and in operation between Houston and Galveston within thirty-six months from the date of the franchise grant. These consequences flow from substantially or identically the same causes. In other words, in the event of either of such failures on the part of the grantees, the contract, when both clauses are considered, amounts to a provision for the appropriation by the city of all the property as well as the $2,500 deposit as liquidated damages of the same default. It is true that they are separated in the ordinance under different clauses, but inasmuch as they relate to the same thing, they should be taken as if occurring together. We are told by one clause that in the event of either of such defaults the city's liquidated damages shall consist of all of the grantees' property, and in the other that it shall take the deposit as liquidated damages, and thus the contract, as it is written, stipulates for the property and the deposit as liquidated damages. In our opinion, whether either is to be allowed as such damages depends upon whether or not the whole, that is, both forfeitures provided for taken together, can be considered such, as this contract is written.

The rule is as stated in Collier v. Betterton, 87 Texas, 440, viz.: "The principle would appear to be that although a sum be named as 'liquidated damages' the courts will not so treat it unless it bear such proportion to the actual damages that it may reasonably be presumed to have been arrived at upon a fair estimation by the parties of the compensation to be paid for the prospective loss. If the supposed stipulation greatly exceed the actual loss—if there be no approximation between them—and this be made to appear by the evidence, then, it seems to us, and then only should the actual damages be the measure of recovery."

If there was in this contract no provision for liquidated damages but the one provided in clause 7, the questions would present more difficulty, but it seems to us that no conclusion of fact is warranted from this contract except that the damages stipulated for as the result of the one and the same cause, embraces the deposit and all of the grantees' property connected with the enterprise, and no conclusion of law can be sound in that connection, which holds that such consequences as this contract provided will justify the presumption that the parties arrived at and adopted them as a fair estimate of any prospective damage to the city. Eakin v. Scott, 70 Texas, 442.

This question is not controlled altogether by the expression in the contract, no matter how vehemently the forfeiture may be denominated "liquidated damages."

It seems to us that the forfeiture provided in clause 6 is of itself inconsistent with any presumption that it was arrived at as a fair approximation or estimate of what damages were likely to accrue to the city by reason of the failure stated, and can not therefore be treated as providing for liquidated damages. The addition of the deposit as

forfeited, by clause 7, for the same default makes the inconsistency stronger, and when considered together as they must be if the entire contract is to be regarded, (as it should be, Eakin v. Scott, *supra*), there remains no doubt that both clauses fall within the same rule.

We conclude therefore that the city is not entitled to retain the deposit as liquidated damages; and as the grantees of the franchise failed *in limine* and no damages appear to have been sustained by the city which are susceptible of ascertainment, we reach the conclusion that the judgment of the District Court should .be reversed and judgment rendered here for .the plaintiff in error.

ON APPELLEE'S MOTION FOR REHEARING.

Appellee insists that the judgment is not a final one, asserting that our opinion is mistaken in stating that Slosson was dismissed from the case.   Appellees have not carefully read the judgment, which begins: "This day coming on to be heard above entitled and numbered cause, the action of plaintiff was dismissed against W. B. Slosson, etc."

In dealing with the question of penalty or liquidated damages we considered the question as it ordinarily obtains in transactions between individuals.   It appears, however, that the ordinary principles governing the subject are not adopted in cases of contracts embodied in legislative grants.

Any grant made by the city of Houston in accordance with a power given in its charter, is of a governmental or legislative character, and entitled to the same construction as if the grant was directly by the Legislature.   Conditions attached to such a grant or contract and imposed in favor of the city, are in their nature conditions imposed by the Legislature, when such conditions follow the charter.

Section XIII of the charter of the city of Houston is set forth in the main opinion.   It authorizes the city, in granting franchises of the character in question, to provide as a part of the grant or contract that upon the termination of the grant the plant, as well as the property of the grantee in the streets, avenues and public places, shall vest in the city with or without compensation.

The city, by its grant or contract, had the power to fix the time when the grant should terminate, and did so by making it run for twenty-one years, as authorized by the charter as the maximum life of the grant; and by providing in section VI that it should terminate earlier in certain events, one of which was the failure of the grantee to have cars in operation within twenty-four months from the passage of the ordinance, and as practically nothing was done by the grantee, the grant then had ceased to exist.

The last named section provided, in substance, as the charter authorized the city to stipulate, for the grant, the plant, and property of the grantee in the streets, avenues and public places, to become vested in the city upon termination of the grant.

The cases relied upon by appellee appear to settle the question in favor of its contention that in so far as the forfeiture of the property of the grantee is concerned, in this class of contracts, where admittedly the damages for a breach thereof are incapable of any ascertainment,

the question of penalty or liquidated damages does not arise as in ordinary contracts; and that such a provision is viewed as a statutory condition of the grant voluntarily accepted, or as the imposition of a statutory penalty for nonperformance. Brooks v. City of Wichita, 114 Fed., 299; Clark v. Barnard, 108 U. S., 436; Salem v. Anson, 67 Pac., 190; Springwells Township v. Detroit, P. & N. Ry., 103 N. W., 700; Indianola v. Gulf, W. T. & Pac. Ry., 56 Texas, 594.

We conclude that we were in error in treating the forfeiture expressed in clause VI of the ordinance in the light of a penalty not to be enforced except as to damages actually shown to have been sustained; and in taking that clause in connection with clause VII in order to determine whether or not the deposit sued for was liquidated damages or penalty.

The latter clause, in effect, provided that the deposit should be returned to the grantees when the road was completed and in operation to Galveston within thirty-six months. The other provision for forfeiture was to run beyond that time and during the life of the contract. Both ran concurrently up to the completion to Galveston. In a case such as we have here, where nothing was done, or in a case where performance was only partial, the $2,500 deposit might have been substantially all the restitution the city would obtain. After the road's completion and operation to Galveston this would be different. It was therefore reasonable and proper for the city to make the provisions separate and we think we were wrong in dealing with them as a single stipulation.

Having upon reconsideration arrived at the above conclusions, and viewing the clause relating to the deposit by itself, we find no difficulty in the way of agreeing with the trial court that it was liquidated damages, and that the city is entitled to retain it. Motion granted and judgment affirmed.

*Affirmed.*

Writ of error refused.