## KELLY v. COCHRAN COUNTY et al.
### No. 3809.

Court of Civil Appeals of Texas. Amarillo.
May 11, 1932.

Rehearing Denied June 8, 1932.

Amidon, Hart, Porter & Hook, of Wichita, Kan., and Lockhart & Brown and Tom Garrard, all of Lubbock, for appellant.

Loyd R. Kennedy, of Morton, and Durwood H. Bradley and Burton S. Burks, both of Lubbock, for appellees.

JACKSON, J.

The plaintiff, E. E. Kelly, instituted this suit in the district court against the defendants Cochran County and the members of its commissioners' court, to recover $19,000 for the alleged breach of twenty contracts entered into by the defendants and the plaintiff.

The record discloses that on January 23, 1926, pursuant to an order of the commissioners' court, an election was held to determine whether or not the bonds of Cochran County should be issued in the amount of $300,000 for the purpose of constructing, maintaining, and operating macadamized, graveled, or paved roads within the county; that the election carried, the commissioners' court ordered bonds, designated as "Cochran County Special Road Bonds," to be issued, aggregating $300,000; that said bonds were duly issued, after which some question arose as to the validity thereof, but that the bonds were adjudged, after litigation, to be valid; that thereafter Cochran County, acting through its commissioners' court, determined to construct the roads of said county by day labor and to pay for such labor and for the material used in the construction out of the money received from the sale of said bonds; that in order to do this, the commissioners' court determined they would procure some one to furnish the necessary tools and equipment and supervise the labor employed by the county to construct the roads, on a cost-plus basis; that on December 13, 1926, the commissioners' court, at a regular session, passed and placed upon its minutes an order, the parts thereof necessary to a disposition of this appeal being:

"That Cochran County and the commissioners court thereof build, construct and surface the following public road in said county, to-wit:

"Beginning at the E. line of Cochran County on the present public road crossing said line in the Town of White Face; thence W. with said road from the town of White Face about

six miles to the townsite of Shipley; thence N. with said road about eight miles; thence W. and N. W. with said public road to the Bailey County line.

"And a road beginning at the townsite of Shipley and extending in a westerly direction along the Santa Fé Railroad right of way to the town of Lehman; thence continuing in a westerly direction along the Santa Fé Railroad right of way to the town of Bledsoe.

"That said road be finished and graded according to the plans and specifications to be furnished by and under the direction of W. A. French and approved by the county commissioners court.

"That the material therefor be furnished by Cochran County and the commissioners court thereof. * * *

"That the building of said road and the labor connected therewith and the payment therefor shall be done by the day and under the direct supervision of a competent engineer furnished by W. A. French and approved by the board of county commissioners. That Cochran County employ some suitable person experienced in road work to procure persons, teams, trucks and machinery for the purpose of such work, to keep an accurate account of labor performed on said road and to generally direct the work and labor of such to the end of procuring the completion of said road in a satisfactory and workmanlike manner to the best interest of the county and under the direct supervision of the engineer approved by the board of commissioners. That Cochran County agree with such person so employed to direct such work to employ such persons, teams, trucks and machinery as may be procured by such person at the prevailing prices for day labor, teams, trucks, shovels, and other equipment necessary and a day on such work shall be construed to mean and shall mean eight hours work."

The order then provides, in substance, that the county receive only written bids for the employment of such a person, and allow the bidder the privilege of furnishing his own teams, trucks, and machinery on the basis set forth; that the bids be received on the construction of lineal miles and fractional parts thereof; that the court reserve the right to reject any and all bids, and that the contract entered into shall be subject to the approval and sale of the special Cochran County road bonds, and the services to be paid for out of the proceeds thereof; that the road be constructed within a reasonable time after the sale of the bonds and the receipt of the money therefor, and obligates the commissioners' court to do all things necessary, and to pass all orders and resolutions required for the speedy approval and sale of the bonds and procuring the proceeds thereof. The court instructs the engineer to divide the proposed road above described into twenty parts or sections and number them consecutively from one to twenty, each part or section to constitute one-twentieth of the entire length of the road.

On December 13, 1926, the plaintiff filed his bid with the commissioners' court on the part of the road designated as section one, offering his services on the terms indicated in the bid. He proposed to furnish the tools, machinery, and equipment necessary; construct the road according to plans and specifications furnished by the county; to use in the work the available tools, machinery, and equipment belonging to the county. His bid stated:

"It is understood that the county will pay all bills incurred by it for labor and materials and that the work under this contract shall be done under the direct supervision of the commissioners court and paid for by the day.

"The undersigned will use his best energies to co-operate with the court in supervising the labor furnished by the county and in using the tools and machinery of the county and in using his or their tools and equipment.

"The undersigned agrees to perform such services for a sum of money equivalent to 12½% calculated on the total cost of said work. It is expressly understood that the total consideration to be paid to the contractor hereunder is to be less than $2,000.00.

"Proper provision shall be made for the payment of liquidated damages in the event the county, without fault of the contractor, discontinues his employment hereunder, the terms of which shall be expressed in the contract.

"The contractor agrees to accept payment either in money or in the legally issued interest bearing warrants of the county bearing 5½% interest and maturing within thirty years.

"In event that this proposal is accepted the contractor binds himself to give a good and sufficient surety bond to the county in the amount of $2,000.00, to secure the performance of this contract in accordance with the provisions of law."

He also filed separate but identical bids on the other nineteen divisions or sections of the road designated from two to twenty, inclusive, offering to perform the same services on each section for the same consideration.

On the same day a contract was signed by the county judge and all the members of the commissioners' court and the plaintiff, which, after reciting that bids of various contractors concerning the construction of a permanent road on the county's right of way described as section one had been considered, that the bid of E. E. Kelly & Company for the work, is construed to be the lowest responsible bid and its acceptance is to the best interest of the county, provides:

"That the contractor will do all the road work necessary and required by the court to construct permanent improvements on that

certain public road in the county, said road and the specific portion thereof being described as follows:

"Section 1.

"Including culvert and small bridge work, to the extent of approximately $12,000.00, and will furnish tools and equipment necessary to be furnished for the different kinds of work to be done, however, said contractor is to have such county tools and equipment as shall be owned or controlled by said county commissioners court which are available for use by said contractor, having due regard for the uses the county may be making of such tools and equipment, said county equipment to be turned back to said Cochran County at the time of completion and final settlement in good repair. It being understood by all parties hereto that said contractor's compensation shall be—per cent (12½%) of the total cost of said road work and expenditures. The said commissioners court shall allow for all labor and material necessary in said road work, wages to be paid for two-horse teams and man $8.00 per eight-hour day, laborers to be paid at the current rate of wages in the County, foreman to be paid at the rate of $50.00 per week.

"2. All work performed hereunder shall be under the direct supervision of the commissioners court and shall be paid for by the day. It shall be the duty of the contractor to use his best energies to co-operate with the County in supervising the labor furnished by the county, in using the materials and machinery of the county, and in using his or their tools and equipment.

"3. Payment shall be made to the contractor on the 1st and 15th of each month in accordance with estimates approved by the supervisor or engineer in charge.

"4. In case said contractor shall be removed for any cause or shall discontinue by mutual consent, that said County shall be liable for all of his earned compensation and as fully liquidated damages for one-half of the total remaining compensation under the contract, and as a basis for such settlement $1,900.00 is hereby recognized and agreed as the total contractual consideration.

"5. Payments shall be made hereunder out of moneys realized by taxation under authority of a vote of the people who have heretofore authorized $300,000.00 of Special County Road Bonds, in one of the two following methods:

"(a) Out of proceeds of the sale of said bonds which have already been voted; or,

"(b) With interest-bearing time warrants maturing over a series of not exceeding thirty years, bearing 5½% interest, supported by a tax voted to support said road improvements;

"(c) 1/20 of the tax heretofore levied to support said bonds has been appropriated to support the warrants hereunder effective in event the bonds have not been converted into money by the time work must be commenced hereunder.

"6. The contractor binds himself to give a good and sufficient surety bond to the County in the amount of $2,000.00 to secure the performance of this contract in accordance with the provisions of law."

On January 1, 1927, the personnel of the commissioners' court was entirely changed, and on January 8, 1927, the contract, or contracts, made between the plaintiff and the defendants on December 13, 1926, were by the unanimous action of the commissioners' court canceled and revoked. The plaintiff sought primarily to recover the liquidated damages stipulated for in the contract, and alleged that, if he was not entitled to recover $950 under each of said contracts as liquidated damages, after the contracts were entered into, the defendant, without lawful excuse, breached said contracts and refused to permit the plaintiff to perform the services thereunder; that he has at all times been and still is ready, able, and willing to perform the duties imposed upon him by virtue of said contracts, says that, if permitted to proceed, he would have realized a net profit of $950 on each of said contracts, and asked that he be allowed to recover the sum of $19,000 as liquidated damages, or in the alternative as net profits.

The defendants attack the validity of the contract sued on and assert that it is illegal, null, and void, because: (a) The twenty alleged contracts constitute in truth and in fact but one contract, and the work to be done thereunder was not submitted to competitive bids and advertised as required by article 2368, R. C. S.; (b) no provision was made for levying and collecting a sufficient tax to pay the interest and create a sinking fund to satisfy the indebtedness incurred; (c) that the execution of the twenty different contracts was a subterfuge to avoid complying with article 2368; (d) that the commissioners' court were without authority, in law, to agree to pay liquidated damages; (e) that, if the instruments be construed to constitute twenty different contracts, each of them call for an expenditure of more than $2,000, and were made in violation of article 2368.

A jury was had, but at the conclusion of the testimony the court peremptorily instructed the jury to find in favor of the defendants, and on the verdict so returned judgment was entered that the plaintiff take nothing by his suit and decreed that the contracts sued on be canceled and held illegal, null, and void, from which judgment the plaintiff prosecutes this appeal.

The appellant challenges as error the action of the trial court in directing a verdict against him and adjudging the contract to be null, void, and unenforceable.

In determining whether the instruments disclosed by the record constitute a valid contract between appellant and appellees, such instruments must be considered and construed together. So considered, they reveal the purpose of the county, acting by and through its commissioners' court, to construct the improvements on the road on a cost-plus basis, according to plans and specifications furnished by the county, with the county furnishing the material and labor, the labor to be employed and paid at the prevailing prices for day labor on a basis of eight hours per day; that the county contracted with the plaintiff to procure persons and to furnish or obtain teams, trucks, and machinery, keep an accurate account of the cost of the labor, and direct and supervise the work, stipulating that the wages for a team of two horses and one man should be $8 for eight hours work, and the salary of a foreman should be $50 per week; that the plaintiff should construct the road within a reasonable time under the direction and supervision of the county engineer and the commissioners' court; that for furnishing the necessary tools and equipment, except that belonging to the county available for use, and for the personal services he was to render, he was to receive 12½ per cent. of the total cost of the improvements; that plaintiff would be paid out of the proceeds of the sale of the $300,000 special road bonds theretofore issued, if they were sold, and with warrants if the bonds had not been converted into money by the time the work should be commenced under the contract.

The testimony discloses that the commissioners' court and the plaintiff understood the contract to mean that the labor on the road was to be done by men employed and paid by the day, and that the plaintiff was employed to direct the construction of the improvement because of his skill in supervising such work.

It was agreed at the trial between the parties that the bonds were valid, and were binding, legal obligations against the county, and that there was on hand at the day of the trial a sufficient amount of the bonds unsold to pay the plaintiff any judgment he might recover in the suit.

Under this record we see no substantial difference in the contract between the appellant and appellees in this case and the contract construed by the Commission of Appeals in the Gulf Bitulithic Co. v. Nueces County, (Tex. Com. App.) 11 S.W.(2d) 305.

We think it clear from the instruments constituting the contract that the improvements were to be constructed on a cost-plus basis; that the material was to be obtained and furnished by the county; that the labor was to be employed by the county and paid by the day; and that the appellant was engaged to direct the labor because of his experience and skill in supervising road construction.

The testimony is uncontroverted that appellant had been engaged in such work for approximately thirty years and was competent to direct and supervise the construction of the road.

The fact that the entire road to be improved was divided into twenty sections and a separate contract let for each section in an effort upon the part of the commissioners' court to avoid the effect of article 2368, R. C. S., would not, in our opinion, invalidate the contract, because if the commissioners' court had the authority to employ a supervisor for the entire road in one contract, as held in the case cited supra, engaging his services for the same work in twenty contracts which covered the entire road, would not render such contracts void.

Appellees' contention that no provision was made for levying and collecting a tax to pay the interest and create a sinking fund to satisfy the indebtedness to plaintiff incurred by the contract is not tenable. Caldwell v. Crosser (Tex. Civ. App.) 20 S.W.(2d) 822.

If the contract is valid, the court was in error in directing a verdict against the appellant.

"Some damages are always presumed to follow the violation of any right or duty, and therefore the party injured is entitled to nominal damages, if none greater are proved." Moore v. Anderson, 30 Tex. 224; Honaker et al. v. Guffey Petroleum Company (Tex. Civ. App.) 294 S. W. 259.

The appellant insists that the court should have peremptorily instructed the jury to find for him because the contract was valid and the amount of the recovery fixed by the provisions of the contract stipulating for liquidated damages.

The bid of appellant stipulated that: "Proper provision shall be made for the payment of liquidated damages in the event the county, without fault of the contractor, discontinues his employment hereunder, the terms of which shall be expressed in the contract."

The contract entered into provides that: "In case said contractor shall be removed for any cause or shall discontinue by mutual consent, that said county shall be liable for all of his earned compensation and as fully liquidated damages for one-half of the total remaining compensation under the contract, and as a basis for such settlement, $1,900.00 is hereby recognized and agreed as the total contractual consideration."

Each of the twenty contracts contained this provision, and, if construed as agreed and liquidated damages for the breach of the contract by the county, would authorize appellant to recover $19,000.

The appellees assert that the clause in the contract attempting to provide for the payment of liquidated damages is ultra vires,

as the commissioners' court was without authority to bind the county by such a stipulation.

■ "A municipality may stipulate for liquidated damages." 44 C. J. 79.

"As a necessary incident to its power to contract, a municipality has power to compromise disputed claims or submit such claims to arbitration" and power "to make contracts gives authority to insert therein a provision that a certain sum shall be deemed liquidated damages." 3 McQuillan Municipal Corporations (2d Ed.) 810.

"If liability exists for consequential damages, the amount thereof may be fixed by agreement between the municipality and the persons entitled thereto." 5 McQuillan Municipal Corporations (2d Ed.) 471.

In the City of Indianola v. Gulf, Western, Texas & Pacific Ry. Co., 56 Tex. 594, the Supreme Court held that the city had the right and power to contract with the railroad to receive the sum specified as liquidated damages for the breach of the contract by the railway company.

In Harris County v. Donaldson et al., 20 Tex. Civ. App. 9, 48 S. W. 791, the Court of Civil Appeals held that the county was entitled to collect, as specified in the contract, $10 per day as liquidated damages for the failure of the contractor to erect a jail in the time agreed upon in the contract.

In Whitcomb v. City of Houston, 61 Tex. Civ. App. 555, 130 S. W. 215, the Court of Civil Appeals held that the city of Houston was entitled to recover liquidated damages as stipulated in the contract for the failure of the grantees therein to build a railroad and have cars in operation within the time contracted.

If a municipality can enforce a provision for liquidated damages inserted in a contract for its benefit, we know of no reason why a stipulation for liquidated damages in a contract with a municipality could not be enforced against it. However, the determination of this question is not necessary to a disposition of this appeal, for, in our opinion, the contract should be construed to provide for a penalty instead of liquidated damages.

The courts apply various tests in determining whether a contract shall be construed as providing for a penalty or for the payment of liquidated damages.

■ If the intention of the parties is clearly expressed in the contract, Collier v. Betterton, 87 Tex. 440, 29 S. W. 467; Langever v. R. G. Smith & Co. (Tex. Com. App.) 278 S. W. 178, the ascertainment of actual damages is intangible, difficult, and uncertain, Magruder et ux. v. Poulton (Tex. Com. App.) 257 S. W. 533, and the amount stipulated bears such relation to the actual damages as authorizes a reasonable presumption that a fair estimate of the prospective loss has been agreed upon, Kelsey et al. v. Blackman (Tex. Civ. App.) 293 S. W. 199, the contract is interpreted to provide for liquidated damages.

■ In construing such contracts the courts consider the nature thereof, the consequent damages of a breach, and the surrounding circumstances. Brooks v. Davis et al. (Tex. Civ. App.) 148 S. W. 1107. If the meaning of the contract is doubtful, Kellam et al. v. Hampton, 58 Tex. Civ. App. 484, 124 S. W. 970, and the actual damages consequent upon the breach of the contract can be ascertained with reasonable certainty, Runnells v. Pruitt (Tex. Civ. App.) 204 S. W. 1017; Schwarz v. Lee (Tex. Civ. App.) 287 S. W. 519, and, if there is no approximation between the damages stipulated for and the actual loss, Ford Motor Co. v. Cranford Auto Co. (Tex. Civ. App.) 206 S. W. 108; Kelsey et al. v. Blackman, supra, the contract is generally construed to provide for a penalty.

■ The contract provided that appellant should perform the services necessary on each subdivision or section of the road at the cost of approximately $12,000, and to receive for his services 12½ per cent. on the cost. For completing each subdivision under the contract at a cost of $12,000, he would have received for his services the sum of $1,500. But, in the attempt to provide for liquidated damages in the event of a breach, it is stipulated that as a basis for the settlement of such damages $1,900 shall be recognized as the total cost of each section. The actual damages, if any, sustained by appellant, could be ascertained with practically the same degree of certainty as the amount of the 12½ per cent., as in either event the cost of the improvements would have to be determined. The probable fluctuation in the current prices of labor and material and the probable time required for the construction of the road, together with the fact that a sum greater than the estimated cost of the construction of each section was agreed on as a basis to fix the amount of appellant's damages, indicates that no fair estimate of the actual damages was arrived at by the contracting parties. McCelvy v. Bell et al. (Tex. Civ. App.) 6 S. W. (2d) 390. Under this record and these authorities, it is our opinion that appellant is not entitled to recover liquidated damages and was not entitled to a directed verdict.

The record discloses that the trial court decided the case on the controversy over appellant's right to recover liquidated damages for the breach of the contract, and his right to recover such actual damages as he may have sustained was not determined.

The contract was entered into on December 13, 1926. On January 8th thereafter, the contract was revoked and canceled by an order of the commissioners' court. The ap-

pellant had neither employed laborers nor furnished or assembled any machinery or equipment with which to construct the improvements on the road. There is no testimony in the record, except the contract and its breach, from which it could be determined whether the appellant suffered any damages by reason of its cancellation by the court.

"If it affirmatively appear that the obligee has suffered no damages as a result of the obligor's default, then as a matter of equity he will not be permitted to recover, even though the stipulation is for liquidated damages in a sum certain, unless, indeed, that purpose is clearly expressed in the bond." Britton et ux. v. Cotton States Petroleum Company et al. (Tex. Civ. App.) 283 S. W. 887, 890.

The appellees' attack upon the sufficiency of appellant's pleading, if sustained, would not authorize an affirmance of the judgment, and, if there is error in the rulings of the trial court on the sufficiency of the pleadings, these can all be corrected by an amendment.

For the errors discussed, the judgment is reversed, and the cause remanded.