### E. E. KELLY V COCHRAN COUNTY ET AL.

No. 6342.   Decided May 15, 1935.
Rehearing overruled June 19, 1935.
(82 S. W., 2d Series, 641.)

*Lockhart, Garrard & Brown,* of Lubbock, and *Amidon, Hart, Porter & Hook,* of Wichita, Kansas, for plaintiff in error, Kelly.

*Loyd R. Kennedy,* of Morton, *Durwood H. Bradley* and

*Burton S. Burks,* both of Lubbock, for defendant in error Cochran County.

Where contracts obligated contractor with county to furnish tools and equipment, which were obtained upon a competitive market, they were void if not advertised to competitive bids, as required by Article 2368, R. S., 1925; Coryell County v. Burke & Corbett, 4 S. W. (2d) 283; Amarillo Oil Co. v. Ranch Creek Oil & Gas Co., 271 S. W., 145; 10 Texas Jur., p. 185.

MR. JUDGE TAYLOR delivered the opinion of Commission of Appeals, Section B.

This suit was by E. E. Kelly, road contractor, against Cochran County for damages alleged to have resulted from cancellation by the county of twenty alleged road construction contracts. The trial court instructed a verdict in favor of the county and judgment was rendered accordingly. The Court of Civil Appeals reversed and remanded the case. 50 S. W. (2d) 848. Both parties filed applications for writs of error, and both were granted. Parties will be referred to as plaintiff and county.

Prior to December 13, 1926, the county had voted bonds of $300,000 for road construction and maintenance purposes. On that date, with a view to constructing permanent improvements on one of its roads, the Commissioners' Court divided the road into twenty sections numbered one to twenty, each section to embrace one-twentieth of the disance from the beginning point to the Bailey County line. On the same date Shultz Construction Co., by Roy Shultz, and E. E. Kelly & Co., by E. E. Kelly, submitted twenty proposals each to "furnish tools, machinery and equipment necessary to construct said improvements according to the plans furnished by the Commissioners' Court upon the specified portions of its right of way described above," with the understanding that the proposer "be permitted to use such tools, equipment and machinery of the county as may be suitable * * * and * * * available * * *, having due consideration for the use the county is making of its tools and equipment elsewhere * * *." The only other obligation assumed by the proposers is that each respectively will use his best energies to cooperate with the court in supervising * * *," and to give bond to the county in the sum of $2000 "to secure the performance of this contract * * *." The proposals of the former were on the basis of a compensation of fifteen per cent of the total cost; the latter, twelve and one-half per cent. On the date mentioned the Kelly & Co. proposals

were accepted and the contract in question was executed in twenty instruments identical in words and figures except section numbers. The copies of the twenty instruments are attached to plaintiff's petition. The preface recitations in the instruments, respectively, are to the effect that the county was desirous of employing a competent person to construct certain permanent road improvements on "cost-plus" basis; had considered competitive proposals therefor, that the total liability of the county should be less than $2000, and that the proposal of plainiff was the lowest and best bid. Following the prefatory recitations the stipulations of the parties, omitting unimporant parts, reads:

"1. That the Contractor will do all the road work necessary and required by the Court to construct permanent improvements on that certain public road and the specific portion thereof being described as follows: Section : (here is inserted the number of the section), including culvert and small bridge work to the extent of approximately $12,000.00, and will furnish tools and equipment necessary to be furnished for the different kinds of work to be done, * * * (except county tools and equipment available). It being understood by all parties hereto that said Contractors compensation shall be 12½ per cent (12½) of the total cost of said road work and expenditures. The said commissioners' court shall allow for all labor and material necessary in said road work, wages to be paid for two horse teams and man $8.00 per eight hour day, laborers to be paid at the current or prevailing rate of wages in the county, foreman to be paid at the rate of $50.00 per week.

"2. All work performed hereunder shall be under the direct supervision of an engineer approved by the commissioners' court and shall be paid for by the day. It shall be the duty of the contractor to use his best energies to cooperate with the county in supervising the labor furnished by the county in using the materials and machinery of the county, and in using his or their tools and equipment.

"3. Payments shall be made to the contractor on the 1st and 15th of each month in accordance with estimate approved by the supervisor or engineer in charge.

"4. In case said contractor shall be removed for any cause or shall discontinue by mutual consent, that said county shall be liable for all of his earned commission or compensation and as fully liquidated damages for one-half the total remaining compensation under the contract, and as a basis for such set-

tlement $1,900 is hereby recognized and agreed as the total contractual consideration.

"6. The contractor binds himself to give good and sufficient surety bond to the county in the amount of $2,000 to secure the performance of this contract in accordance with the provisions of law."

On December 8, 1931, eighteen days after executing the instruments, the commissioners and county judge signing the same, retired from office, their respective terms having expired. The commissioners' court on January 8th following, the new commissioners and county judge having been installed in the meantime, "cancelled and revoked" the "contract or pretended contract," as shown by the minutes of the court.

At the time of cancellation the contractor had not done any work on the road. The recovery sought by him was for $19,000 alleged to be due under the liquidated damage clause of the contract, being one-half of the total amount required as a basis for settlement. The county set up in defense the illegality of the contract upon several different grounds. The only ground necessary to be discussed is that the contract was void and of no effect because the execution of the twenty instruments in question was a subterfuge, and effort on the part of the commissioners' court to avoid compliance with article 2368 of the Revised Civil Statutes, and constituted a fraud upon the county.

The article referred to provides that "No commissioners' court shall make a contract calling for or requiring the expenditure or payment of $2000 or more out of any fund or funds of any county * * * without first submitting such proposed contract to competitive bids. Notice of the time and place, when and where such contract will be let shall be published in such county * * * once a week for four weeks prior to the time set for the letting such contract * * * provided that in case of public calamity, where it becomes necessary to act at once to appropriate money to relieve the necessity of citizens or to preserve the property of the county * * * this provision may be waived. The provisions of this article shall not apply to any work done under the direct supervision of the commissioners' court and paid for by the day. A contract made by the commissioners' court without complying with the terms of this article shall be void, and shall not be enforceable in any court of this State * * *."

The foregoing article was subsequently repealed and article 2368a substituted in its stead. Supplement to Vernon Sayles

Statutes, p. 214. The terms of the substituted aricle are not pertinent here.

The action of the court in entering into twenty identical contracts with the same contractor at the same time covering a continuous stretch of road construction was, to say the least, an unusual procedure. The testimony is undisputed that the court's purpose in so proceeding was to obviate compliance with the statutory requirements to advertise for submission of competitive bids upon a contract requiring the expenditure of more than $2000 of county funds.

Valvin Hinson, who was county attorney of Cochran County at the time of the execution of the contracts, testified that he advised the commissioners' court with reference to the statutory requirement "to advertise where a contract called for the expenditure of more than $2000."

W. A. Herridge, who was one of the commissioners signing the contract, testified that twenty contracts instead of one were made "because * * * anything over $2000 had to be advertised."

. . T. W. Bennett, another of the commissioners signing the contracts, testified that "the contracts were let on account of getting around this advertisement," and answered in the affirmative an inquiry as to whether "it was an attempt on the part of the commissioners' court to avoid that provision of the statute which requires a contract calling for an expenditure of more than $2000 of the county funds to be advertised."

The plaintiff himself testified that as far as he was concerned the twenty contracts amounted to about the same thing as one contract. When asked on cross examination why it was he made twenty different contracts replied that he didn't make them; that he supposed the commissioners' court made the contracts. When asked if the work could not have been done as well under a single contract, he replied that it probably could; and in response to an inquiry as to what the reason was for making twenty contracts stated that the commissioners' court likely had a reason, but he did not have any.

Plaintiff's view of this matter is reflected in the allegation of his first supplemental petition which reads:

"The motives that actuated the commissioners' court of Cochran County in requiring bids to be submitted in that manner were not at the time known to plaintiff, and plaintiff does not now know what such motives were; but plaintiff would respectfully show to the court that the commissioners' court of Cochran county had the legal authority to divide said road

into sections as they did; * * * that their purpose or intent in so. doing would not and could not affect this plaintiff's legal right in the premises. That this plaintiff acted in good faith * * * entering into the contracts upon which he sues."

1 Obviously the purpose of the commissioners' court in making the contract in the form in which it was executed was to avoid compliance with the mandatory advertising requirements of article 2368. The contract being made pursuant to such purpose, regardless of whether by chance it is legal as to form, was subject to cancellation by the new commissioners' court.

2 It is not necessary however to rest the decision on this holding alone. The contract under consideration is not one in which plaintiff was employed solely on account of his skill, scientific knowledge and experience, to supervise the road construction in question. His chief obligation under its terms is to furnish the tools and equipment necessary for the work. While under certain contingencies he has the privilege of using some of the county's tools, the obligation to furnish the tools and equipment, all of it, if necessary is his; and in any event the obligation to furnish the greater part of it, is his. Furnishing tools and equipment for road construction which calls for an expenditure of $250,000 or more, is competitive in its nature. This stipulation of the contract brings it within the purview of article 2368, and differentiates it from Gulf Bitulithic Co. v. Nueces County (Com. App.), 11 S. W. (2d) 305, relied upon by the Court of Civil Appeals. In that case the plaintiff company was not employed as a contractor, but solely on account of the skill, scientific knowledge and experience of plaintiff's organization of men to supervise the construction of a patented pavement. The plaintiff was not a contractor in the usual acceptation of the term. It was the county's agent employed for the specific purpose stated. In the case at bar plaintiff contracted to furnish tools and equipment and is referred to throughout the contract as "contractor." His obligation in addition to the competitive obligation referred to, was to use his best energies to cooperate with the county. The statute excepts from its terms work performed under the direct supervision of the commissioners' court and paid for by the day. The inclusion in the contract of such a stipulation, along with the somewhat inconsistent provision that "payment shall be made to the contractor on the first and fifteenth of each month in accordance with estimates approved by the supervisor or engineer in charge," does not change the competitive nature

of the contract. It may safely be assumed, in view of the uncontradicted testimony concerning the court's purpose to evade the statute, that it was included in furtherance of such purpose.

The contract is void and the new commissioners were within their right in refusing to recognize it as a binding obligation on the county.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court May 15, 1935.

Rehearing overruled June 19, 1935.