STATE, *ex rel.*, WILLIAM THOMAS GALLAWAY, v. T. N. HENDERSON, *et al.*

184 So. 654.
Division A.
Opinion Filed October 31, 1938.
Rehearing Denied December 7, 1938.

*Edwin Thomas, Henry E. Williams, James C. Gywnn* and *Lewis W. Petteway,* for Relator;

*John W. Cone* and *John J. Twomey,* for Respondents;

*R. W. Ashmore* and *Hull, Landis & Whitehair,* as *amici curiae.*

TERRELL, J.—The record and briefs in this case have been examined and in the main, the questions raised are identical with those raised in State, *ex rel.,* J. J. Houston v. The County of Hillsborough, *et al.,* decided this date. In so far as they are similar, the questions raised in this case are concluded and disposed of by the opinion in the latter case.

There is the additional question raised in this case to the effect that Chapter 18406, Acts of 1937, is violative of Section Twenty-six of Article Three of the Constitution. It is also contended that the published notice of the election held to vote on the question of adopting voting machines by

Hillsborough County was for a shorter period than that required by law and being so, the election is ineffectual.

In answering the latter contention, it is sufficient to say that the election was held almost a year before the petition for alternative writ was filed and it does not show on its face that the notice of election was not advertised the required time.

In answer to the charge that Chapter 18406, Acts of 1937, is violative of Section Twenty-six of Article Three of the Constitution relating to the regulation of elections, it is sufficient to say that the said act should be read in *pari materia* with all provisions of the general election laws and when so read, this objection vanishes.

The motion to quash the alternative writ is therefore sustained but with leave to amend within thirty days.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

ELLIS, C. J., and BROWN, J., dissent.

ELLIS, C. J. (dissenting).—An alternative writ of mandamus was issued by this Court on September 15, 1938, upon the petition of J. J. Houston, a tax payer and qualified elector of Hillsborough County, Florida, directed to the Board of County Commissioners and the Clerk of the Circuit Court of Hillsborough County commanding them to assemble and rescind three certain resolutions adopted by them, to-wit: a resolution dated November 15, 1937, whereby they entered into a contract with Shoup Voting Machine Corporation for the purchase of ninety-three voting machines for use in conducting elections in that County, a resolution dated June 24, 1938, authorizing and providing for the issuing of "Voting Machine certificates of indebtedness" in which it was provided and agreed that a tax would be levied sufficient to pay the amount evidenced by such certificates and the interest coupons annexed thereto as they

matured; and a resolution dated September 8, 1938, approving the budget for Hillsborough County for the taxable year 1938 whereby they imposed a certain tax to pay the principal and interest of said "voting machine certificates of indebtedness" maturing that year.

William Thomas Galloway, another taxpayer and qualified elector of said County, evidently feeling the necessity and desirability of raising additional constitutional questions with reference to the same situation, lodged his petition in this Court on October 1, 1938, in which petition the attack made upon the foregoing resolutions and actions of the Board of County Commissioners of Hillsborough County as referred to above was enlarged by the inclusion therein of vital constitutional questions not raised in the Houston petition.

The Shoup Voting Machine Corporation which held the "Voting Machine certificates of Indebtedness" in question and with whom the Board of County Commissioners of Hillsborough County had entered into the contract aforesaid for the purchase of ninety-three voting machines, was named as one of the respondents in the Gallaway petition. An alternative writ of mandamus was likewise issued in the Gallaway case directed to the County Commissioners and Clerk of the Circuit Court of Hillsborough County and the Shoup Voting Machine Corporation commanding that said Board of County Commissioners assemble and rescind the resolutions above referred to, and that said Board and the Shoup Voting Machine Corporation cancel the contract entered into between them for the purchase of the said ninety-three voting machines.

Motions to quash and demurrers to the petition and the alternative writ were interposed by respondents in both cases.

The facts and issues in the two cases being identical it

was determined by the Court to withhold further consideration of the Houston case until the Gallaway case could be considered with it and the two cases disposed of together.

The Board of County Commissioners of Hillsborough County assembled on November 12, 1937, and receiving bids for the purchase of voting machines to be used in conducting elections in said County. A few days later on November 15, 1937, the said Board again met and at this meeting accepted the bid of Shoup Voting Machine Corporaion for the sale of ninety-three voting machines to Hillsborough County. On the 3rd day of December, 1937, the Board of County Commissioners of Hillsborough County met and adopted an amended resolution authorizing the purchase of ninety-three voting machines from Shoup Voting Machine Corporation and directed the execution of a contract for the purchase of said machines. This contract was executed between the said Board of County Commissioners and the Shoup Voting Machine Corporation and provided for the purchase of ninety-three voting machines at a price of $1,-198.89 for each machine, or a total purchase price of $111,-496.77, of which sum $9,000.00 was to be paid in cash upon delivery of said machines and the balance of the purchase price was to be paid in five equal annual installments of $20,499.35. It was agreed in the contract that all deferred payments would bear interest at the rate of four per centum per annum.

On June 24, 1938, the Board of County Commissioners of Hillsborough County, without having previously called a freeholders' election, authorized, issued and delivered to Shoup Voting Machine Corporation certain evidences of indebtedness, designated "Voting Machine Certificates of Payment" with interest coupons attached thereto, as security for the payment of the said ninety-three voting machines.

The Board of County Commissioners agreed, and so

stated in the face of said certificates, to levy a tax each year for five consecutive years sufficient to pay the amount evidenced by said certificates and interest coupons annexed, thereto as they matured each year. Pursuant to this agreement the said Board of County Commissioners on September 8, 1938, in approving the budget of Hillsborough County for the taxable year 1938 included therein the sum of $27,-256.73 designated as "Voting Machine Certificate Fund."

Voting machines have been used for many years in various states. However their use in conducting elections in Florida is even now in its very beginning. A voting machine is a mechanical device for recording and tabulating the vote of the electorate. Where voting machines are used in this State they are substituted for the familiar round or square wooden or metallic box containing an opening in the top through which the voter inserts his marked ballot. These mechanical devices are set up in the voting places of the various precincts in place of the customary booths which through the years have become associated with the conducting of elections in this State. An election conducted by means of these mechanical devices does not require nor permit the customary individual printed ballots. The machine is equipped with a curtain which insures secrecy in voting. While concealed behind this curtain the voter maneuvers certain levers and gadgets which are designed to indicate and register his voice of the candidates. The results are automatically tabulated as the voting proceeds somewhat similar to the principle upon which the adding machine works. These mechanical devices are a permissible substitute, under proper legislation, for the booths, printed ballots, ballot boxes and many other devices which have become an integral part of conducting elections in this State.

The question presents itself in the two cases at bar as to what authority the Board of County Commissioners of

Hillsborough County had to enter into the contract with Shoup Voting Machine Corporation for the purchase of ninety-three voting machines and the issuing of interest bearing "Voting Machine Certificates of Indebtedness" specifically pledging the future taxing power of said County as security for the payment thereof without a freeholders election as contemplated by Section 6, Art. IX, of the Constitution of Florida as amended.

Amended Section 6, Art. IX, of the Constitution provides:

"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the counties, districts or municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such counties, districts, or municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this law shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such counties, districts or municipalities."

It is provided in Section 250 Compiled General Laws of Florida, 1927, that:

"It shall be unlawful for any person to vote or participate in any county, district, or other bond election held in this State, who is not a freeholder therein and who is not otherwise qualified as a voter therein."

From the Constitutional provision and the Statute just quoted it necessarily follows that if the "Voting Machine Certificates of Payment" issued by the County Commissioners of Hillsborough County without the approval of a majority of the votes case in a freeholders election are bonds

within the meaning of the above constitutional prohibition then such certificates are invalid.

It is specifically contracted and agreed in the face of said certificates "That the levy of a tax will be made sufficient to pay the amount evidenced by this certificate and all other certificates issued under said contract, and the annexed coupons as the same mature, for the period of five consecutive years." This provision is a definite pledging of the future taxing power of the County of Hillsborough for the present funding of a contract for the purchase of ninety-three voting machines. The holder of these certificates would have a right upon default in the payment of said certificates to coerce by mandamus the taxing power of said County for the purpose of paying off the obligation of said certificates. That such an instrument constitutes a bond within the meaning of amended Section 6, Art. IX, of the Constitution cannot be doubted.

In the case of Leon County v. State, 122 Fla. 505, 165 South. Rep. 666, this Court had before it similar tax anticipation certificates of indebtedness of Leon County proposed to be issued by the County of Leon for the purpose of presently funding a County building tax provided for and levied under the provisions of Section 2384 C. G. L. 1927, Section 1556 R. G. S. 1920, for the purpose of erecting in said County a new jail as provided for by law. In the opinion in that case Mr. Justice Davis, speaking for the Court, clearly defined a bond as contemplated by this section of the Constitution as follows:

"Any contractual device for the present funding of tax revenues contemplated to be raised or made available for reimbursement in future years, contrived to be issued as an enforceable legal security to the obligee, or his assignee, by means of which such obligee or his assignee will acquire a legal or equitable right to coerce by judicial processes the

repayment of a sum of money advanced on the strength thereof, together with interest for the hire of the amount advanced, however calculated or provided to be paid upon the sum so involved, is in contemplation of amended Section 6 of Article 9 of the Constitution of Florida a 'bond' and within the purview of the specific prohibition and limitations of that section as to the issuance of "bonds." This is so, not only because any scheme of public financing, directly or indirectly, immediately or contingently calculated to obligate the future taxing power of the obligor, is within the scope of the Florida constitutional limitation on the issuance of 'bonds,' but because such contemplated obligation of the powers of future taxation can no more be afterwards repudiated as forming no part of the present transaction for a funding of the future public resources than a mortgage executed as security for a note can be subsequently disregarded as forming no part of the contractual arrangement evidenced by the negotiation of the same. See City of Clearwater v. State, *ex rel.,* United Mutual Life Ins. Co., 108 Fla. 623, 147 So. 459, citing to this effect Godchaux Co. v. Estopinal, 142 La. 812, 77 So. 640."

As was said by the writer of the present opinion in the case of Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 South. Rep. 356,

"The power involved (in the constitutional amendment) was the sovereign power of taxation. That was the power which was guarded by the constitutional limitation."

In discussing the meaning of "bonds" as used in this Section of the Constitution, it was further said in the Kathleen Citrus Land Company case, *supra*:

"Whether the proposition * * * lies within the inhibitions of the Constitution * * * does not depend upon whether the proposed promises to be issued (by the taxing unit) are 'bonds' within a narrow meaning of the term having relation

to form and name and verbal construction, but whether the 'project' contemplates the incurring of an indebtedness by the (taxing unit) in whole or in part, directly or incidentally, presently or potentially coercive upon the municipality to exercise the sovereign power of taxation to redeem such promises or pay any portion of such debt or expense incident to the execution and maintenance of the project. That must be so because the power of debt making and taxation to pay it or any part of it cannot be gauged by the degree or extent of its exercise. (The taxing unit) must confine its expenses within its legitimate revenue for the fiscal year whether for governmental or proprietary activities, where such activities may entail present funding or future revenue derived from the exercise of the taxing power 'whether general or limited, direct or contingent in form.' See Leon County v. State (Fla.) 165 So. 666."

Again in that same opinion the Court said:

"Any scheme which may involve or be interpreted as constituting a direct, indirect, or contingent pledge or obligation of the (taxing unit's) taxing power will bring it within the constitutional inhibition of creating the indebtedness without the consent of the freeholders in an election called to determine the question."

It was further said in that case that;

"Where the people in their Constitution expressly place a limit upon public servants in the exercise of the taxing power, any scheme of financing which may involve an even doubtful transgression of such limitation should be resolved against the public officials and in favor of the people, which is the surest method of preserving to them the rights which they have not surrendered into the hands of their servants."

The case of Tapers v. Pichard, 124 Fla. 549, 169 South. Rep. 39, cannot be taken as an authority for upholding the validity of these "voting machine certificates of payment."

That case must be read in the light of the opinion in the case of Leon County v. State, *supra,* and Kathleen Citrus Land Company v. City of Lakeland, *supra.*

In the Pichard case, *supra,* there was involved no contract whereby the creditor of the taxing unit acquired a legal or equitable right to require the governing authority to levy a tax for the payment of the obligation each year as it matured. There the taxing unit had levied a tax, for the erection of a jail consisting of five mills over a limited period of five years, in lieu of all other building taxes, and issued to the contractor certificates of payment as the construction work progressed which certificates were redeemable out of the building fund so created as it was collected. Those certificates were nothing more than warrants payable out of that particular fund unsecured by any pledge of the future taxing power of the taxing unit.

In the present case the Board of County Commissioners of Hillsborough County have attempted to enter into an enforceable contract pledging the future taxing power of the County. The Pichard case, *supra,* represents the ultimate limit to which the court should go in approving financing projects by political subdivisions. The doctrine therein announced should not now be extended to permit anticipation of future taxes for presently funding supposedly necessary projects.

It is next contended that the Board of County Commissioners of Hillsborough County were without authority to enter into the contract with Shoup Voting Machine Corporation for the purchase of voting machines for use on conducting elections in Hillsborough County because Chapter 18406, Laws of Florida, 1937, requiring their use in that county is a local or special law, and unconstitutional in that it attempts to regulate the jurisdiction and duties of a class

of officers other than municipal officers in contravention of Section 20, Art. III of the Constitution.

The title of this Act is as follows:

"AN ACT to Provide for the Use of Voting Machines for All Elections in All Counties in the State of Florida Having a Population of Not Less Than 150,000 or More Than 170,-000 According to the State Census of 1935, in All Municipalities in said Counties and Providing for County Commissioners or Governing Authorities to Purchase, Lease or Rent Machines for Election Purposes and Providing a Referendum Thereon."

The population of Counties within the purview of this Act is determined according to the State census of 1935. This provision of the Act limits its application so that no County other than those coming within the stated population at the time of the State census of 1935 can ever come within its scope.

This Court in Whitney v. Hillsborough County, 99 Fla. 628, 127 South. Rep. 486, in considering a similar Act, held it to be a special or local act. In the opinion in that case it was said:

"That census had been completed and published prior to the passage of Chapter 10140, *supra*. Hillsborough being the only county of not less than one hundred thirty thousand population according to that census, the Act could not at the time of its passage, nor thereafter, apply to any other county, actually or potentially. Thus circumscribed, the provisions of the Act are confined exclusively and permamently to Hillsborough county as definitely and unalterably as if that county alone had been specifically named in the Act. The Act does not relate a class of counties generally, or could it apply to counties subsequently acquiring a population of 130,000 or more, as it is limited to the State census of 1935. The Act relates only to one definitely identified

county, and can never extend to any other county. "It is therefore a local or special law."

This Court will take judicial notice of the fact that Hillsborough County is the only County in the State of Florida having a population of not less than 150,000 nor more than 170,000 according to the State census of 1935. It necessarily must follow that the Act in question is a local or special law.

We must now consider whether or not it is such a local or special law as is permitted by the Constitution.

Section 20, Art. III of the Constitution provides:

"The Legislature shall not pass special or local laws in any of the following enumerated cases: that is to say, regulating the jurisdiction and duties of any class of officers, except municipal officers, * * * for opening and conducting elections for State and county officers, and for designating the places of voting;".

It is contended that Chapter 18,406, *supra*, is in contravention of this section because it affects the powers and duties of the Board of County Commissioners of Hillsborough County in the matter of the exercise of certain discretionary powers vested in them by general law.

Section 5, Art. VIII of the Constitution in part provides: "The powers, duties and compensation of such county commissioners shall be prescribed by law."

In the case of State of Florida, *et al.*, v. Walton County, 93 Fla. 796, 112 South. Rep. 630, it was held that County Commissioners are constitutional officers, whose powers and duties shall be fixed by the Legislature.

In 1937 the Legislature enacted Chapter 18504, amending certain sections of Chapter 13893, General Laws of 1929. Section 3 of Chapter 18405, *supra*, provides in part as follows:

"The Board of County Commissioners of any county or the governing body of any municipality, may if it so elects, submit to the voters of such county or municipality at a general or special election, the question of whether or not it shall avail itself of the benefits of this Act. Providing, however, that a special election shall not be called for the sole purpose of determining this question. And if a majority of the voters voting at such election approve, the said Board of County Commissioners of such county or the governing body of such municipality, shall thereupon adopt for use at elections any kind of voting machine that meets the requirements of this Act, and thereupon such voting machine shall be used at any and all elections held in such county or municipality or any part thereof for voting, registering and counting votes cast at such elections; provided, however, that the Board of County Commissioners of any county or the governing body of any municipality may purchase, install and use, not to exceed (5) five voting machines, meeting the requirements of this Act, for the purpose of experimenting with same in such districts or precincts as they may deem proper, without submission of the question of the voters of the county or municipality."

The foregoing provision in the general voting machine law vests in the various boards of county commissioners broad discretionary powers as to whether or not they will submit to the voters of the county the question of whether it shall avail itself of the benefits of the Act.

Section 1 of Chapter 18406, *supra,* a local or special law applicable only to Hillsborough County, provides:

"In all elections held hereafter it shall be mandatory for the governing officers of the counties having a population of not less than 150,000 nor more than 170,000, according to the State Census of 1935, and for all municipalities within

said counties to conduct all general, primary and special elections held within said cities and counties, with the use of voting machines to be of a kind or kinds to meet the requirements for voting machines as contained in Chapter 13,893, of the Laws of Florida, 1929, as amended by the Legislature in 1937; PROVIDED the county commissioners of any county, or governing body of any municipality shall be required to effect arrangements whereby voting machines may be purchased, leased or rented with a purchase, rent or lease provision therein at a cost to said board of county commissioners or governing body of said city not to exceed $125.00 per machine for each election."

Section 4 of the same Act provides:

"The question as to whether this Act shall take effect shall be submitted to the qualified electors of Hillsborough County in a Special Election to be held in said County on Tuesday, October 5th, 1937. The question shall be submitted on the Ballot in the following form:

_____For voting machines

_____ Against voting machines

If it should appear from the returns of said election that a majority of the voters voting in said election on said question shall have voted for voting machines, then this Act shall, upon the issuance of the proclamation by the Governor, be in full force and effect. In the event a majority of the voters voting in said election shall vote against voting machines, then this Act shall not be further operative or effective."

The effect of the foregoing provisions of Chapter 18406, *supra,* is to compel the County Commissioners of Hillsborough County to submit the qualified electors of that County the question as to whether this special act requiring the use of voting machines in Hillsborough County shall

take effect. It deprives that Board of the discretion vested in it by the general law on the same subject.

The Board of County Commissioners of Hillsborough County never saw fit to submit to the voters of that County the question of whether it would avail itself of the benefits of the general act. No question was submitted by them to the voters of that County with reference to voting machines until its submission became mandatory by local or special law.

In State, *ex rel.,* Himes v. Culbreath, 128 Fla. 210, 174 South, Rep. 422, this Court had under consideration a local law authorizing the Board of County Commissioners of Hillsborough County to employ a county attorney and limiting the employment of such attorney to one who resided in the county and who had been practicing for at least five years in such County. By general law, Sec. 2153, C. G. L. 1927, the Board of County Commissioners was empowered to represent the County in the prosecution and defense of all legal causes. In the opinion in that case it was said:

"The language contained in the (general law) grant of that power by the Legislature necessarily vests the boards of county commissioners, which are the fiscal agents of the counties * * * with broad discretionary powers to the end that the interest of the counties in all legal causes and controversies in which they may be involved shall be adequately served."

We further said in that case:

"The (local) act affects the powers and duties of the Board of County Commissioners of Hillsborough County, in the matter of the exercise of the general duty and power to represent the county in the prosecution and defense of all legal causes * * * . In as much as it does attempt to regulate the jurisdiction and duties of the board of County com-

missioners of Hillsborough County * * * , we hold the act to be invalid as being in conflict with the inhibition of the Constitution contained in Section 20 and 21. Art. III, thereof."

If it should be considered that the "Voting Machine certificates of payment" are valid and binding under the ruling in Tapers v. Pichard, *supra,* on the ground that they were for a necessary budgetary expense of the County it would then become even more evident that Chapter 18406, *supra,* is in conflict with the inhibitions of Sections 20 and 21, Art. III of the Constitution, because the boards of County Commissioners are the fiscal agents of the County vested with jurisdiction and powers by general law over the budgetary requirements of their respective counties, and Chapter 18406, *supra,* affects those powers and duties by making it mandatory, under a local law, that they perform supposedly budgetary functions that are not similarly required of boards of county commissioners generally.

It is further contended that Chapter 18406, is in conflict with Section 20, Art. III, of the Constitution in that it is a local law for opening and conducting elections for State and County officers, and for designating the places of voting.

This contention appears to be well founded. The very wording of the Act itself would indicate this:

"In all elections held hereafter it shall be mandatory for the governing officers of the counties having a population of not less than 150,000 nor more than 170,000, according to the State Census of 1935, and for all municipalities within said counties to *conduct all general, primary and special elections* held within said cities and counties, with the use of voting machines." (Italics supplied.)

We have already pointed out in this opinion how voting machines are used in conducting elections; how they are

substituted for the familiar printed ballots, ballot boxes and booths; how they register and tabulate the vote of the electorate. Clearly these all have to do with conducting elections.

This conflict is not cured by the fact that Chapter 18406, contains similar provisions to those of the general laws affecting all other counties of the State and that voting machines are not required to be purchased until adopted by the qualified electors or that the ratification of the Act in the special election was at the same time an adoption of such machines.

Section 21, Art. III of the Constitution as amended provides in substance that no special or local law shall be passed unless notice of intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated but further that proof of such prohibition of notice shall be established in the Legislature before such bill shall be passed by having an affidavit of proof of publication attached to the proposed bill when same is introduced, and that such affidavit shall be entered in full upon the journals of the Senate and of the House of Representatives, provided, however, that publication of local or special laws is not required where such local or special law contains a provision to the effect that the same shall not become operative or effective until the same has been ratified or approved by a majority of the qualified electors participating in an election called in the territory affected by such special or local law.

The journals of the 1937 Session of the Florida State Legislature do not contain or show any affidavit constituting proof of publication as required by this section of the Constitution. The validity of the Act then depends upon a ratification of the Act by the qualified electors of the dis-

trict or county affected. The special election provided for by Chapter 18406, *supra,* was therefore for the sole purpose of submitting to the qualified electors of the County of Hillsborough the question of the ratification of the act itself and not the question of the adoption of voting machines.

The fact that the form of submission was:

" _____ For voting machines" and

" _____ Against voting machines"

does not alter the situation. Nor can this referendum election, which was limited to the question of ratification of the act, be considered as an election on the question of whether or not the County will avail itself of the benefits of the general act relating to the adoption of voting machines, Chapter 18405, *supra.* Under the provision of the general act a special election cannot be called for the sole purpose of determining whether a county shall avail itself of the benefit of that act.

The contention of the respondents that the referendum election called by Chapter 18406, *supra,* was sufficient authority for the purchase of voting machines and the issuance of the aforementioned certificates in payment thereof is untenable because Section 6 of Chapter 18406, *supra,* provides that:

"Those persons authorized to participate in the General State and County elections of 1936 shall be authorized to vote under the provisions of this Act on this question." and therefore participation in that election was not limited to freeholders as contemplated by Sec. 6, Art. IX, of the Constitution and Sec. 250, C. G. L. 1927.

The provisions of Section 6, Chapter 18406, *supra,* likewise tend to disfranchise those people of Hillsborough County who become qualified electors under Sec. 1, Art. VI

of the Constitution after the general election of 1936, and prior to the special election called by the Act for October 5, 1937. This provision not only tends to disfranchise some but extends the qualification of those persons who were qualified electors in the general election of 1936 but who since that time and before the special election of October 5, 1937, may have become disqualified by change of residence or other disability, all of whom is in derogation of Section 1, Art. VI, of the Constitution.

We therefore hold that the "voting machine certificates of payment" are invalid, and that Chapter 18406, Laws of Florida, 1937, *supra,* is unconstitutional.

The motion to quash should be denied and the demurrer to the petition and alternative writ should be overruled, and a peremptory writ of mandamus issued.

Brown, J., concurs.